Kinkade, J.
 

 This is a first degree murder case in which the jury did not recommend mercy. The plaintiff in error, James D. Lyon, was jointly indicted with his brother, Leonard Lyon, by the grand jury of Huron county, for the killing of Frank E. McG-rath. The indictment contained three counts. The first count charged that the killing was willful, malicious, and premeditated. The second
 
 *267
 
 count charged that the killing took place while the Lyon brothers were engaged in the committing of a robbery. The third count was withdrawn from the consideration of the jury pending the trial. James D. Lyon was put on trial separately. He entered a plea of not guilty. The jury returned a verdict finding him guilty as charged in both the first and second counts of the indictment. Motion for a new trial and supplemental motion for a new trial were overruled, and exceptions saved, and Lyon was sentenced to death in the electric chair. He prosecuted error to the Court of Appeals, which court affirmed the judgment of the trial court, and Lyon now prosecutes error to this court. He assigns as error that the court announced and enforced an erroneous and illegal rule to be followed by counsel in the impaneling of the jury, and particularly in the exercise of the right of peremptory challenge; that the court erred in admitting incompetent evidence prejudicial to the accused; that the court erred in refusing to charge the law on assault and battery; that the general charge of the court so pointedly and markedly indicated to the jury that the trial judge was of the opinion that the accused was guilty of the crime charged as to deny to Lyon a fair and impartial trial by the jury adopting the views of the court, instead of ■ following its own views on the questions of fact pertaining to the guilt of the accused; that the court was in error in overruling the motions for a new trial, and particularly in overruling the supplemental motion for a new trial, based on the ground that one of the jurors had, prior to the time of the trial,
 
 *268
 
 become disqualified to act as a juror by having accepted a wager of a box of cigars tendered by another party that Lyon would not suffer death in the electric chair, the juror accepting the wager having thereby indicated his opinion that Lyon would suffer that penalty.
 

 Shortly prior to the indictment of the Lyon brothers, the place of business of the American Railway Express Company in Norwalk had been burglarized, and money and other valuables taken therefrom, including a number of revolvers that were owned by the express company. The Lyon brothers were suspected of having committed this burglary. A warrant was duly iissued for their arrest, and at the same time a search warrant was issued authorizing a search of the home of the Lyon brothers, located on a farm in Huron county. Two deputy sheriffs and two officers of the police department of the express company took the warrants named and went to the home of the Lyon brothers for the purpose of making the arrests and a search of the prémises. From what took place immediately after the arrival of the four officers at the Lyon home, the inference is very strong that the officers had been seen as they arrived, and a plan had quickly been determined upon by the Lyon brothers as to how they could best meet the situation. At any rate, the officers were met by Leonard Lyon in the yard near the house, and, when the officers inquired for James D. Lyon, Leonard answered that his brother was not at home, that he had gone to Willard, Ohio, to look for work. The officers made known the fact that they had a warrant to search the house, and
 
 *269
 
 Leonard volunteered to show them over the house, and to show them into the room of James D. Lyon, which they said they wished to search. Two of the officers remained on the ground floor, and the other two were led up stairs by Leonard Lyon, and shown into the room of James D. Lyon. As they stepped into this room, they were confronted by James D. Lyon with a revolver in each hand, and were ordered to throw up their hands, which the officers promptly did. James D. Lyon then instructed his brother, Leonard, to take from the officers their revolvers, which Leonard Lyon proceeded to do. Then James D. Lyon, keeping his revolvers trained on the two officers, backed to the stairway, commanding the officers to follow with their hands over their heads, which they did, and commanding at the same time his brother to follow the officers with their revolvers in his hands ready for instant use. In this order they started down the stairway. When James D. Lyon reached the landing of the stairs, about midway down, one of the officers who had remained on the ground floor appeared at the foot of the stairs and started up. This seemed to call for some attention, and he was immediately covered by James D. Lyon’s revolver, and ordered to back down the stairway, which he did, accidentally falling to the floor on his hands and knees as he did so. At about the same instant McGrath, evidently seeing that the attention of James D. Lyon had been slightly diverted from him and the other officer who was following him down the stairs, jumped to the landing of the stairs where James D. Lyon was standing, and grappled with him in an effort
 
 *270
 
 to disarm Mm. Thereupon James D. Lyon began shooting and trying to free himself from the grasp of McGrath. The bullet from one of his shots passed through McGrath’s neck, and the bullet from the second shot passed through McGrath’s heart, and McGrath fell down the stairs past James D. Lyon, landing near the third officer, who had come to the foot of the stairs. That officer, not knowing that McGrath was dead, undertook to give him some assistance, and James D. Lyon shot at him, the bullet passing through his ¡clothing near the shoulder, but not inflicting any wound. By reason of the killing of McGrath, and the other incidents that were happening in rapid succession, the Lyon brothers succeeded in reaching the yard and in holding the other officers in abeyance until they could take possession of the automobile in which the deputy sheriffs had come to the scene, by which means the Lyon brothers made their escape from the place in great haste. They drove to a number of towns without apparently having any definite destination in view. As the automobile they had taken ran out of gasoline, or something else happened to it, they abandoned that car and stole another, and went ahead. This performance was repeated several times in the course of their flight, stealing a new car every time the one they were using failed to perform any longer. They finally landed at Alpena, Mich., where they were arrested after James D. Lyon had shot the chief of police in an effort to make another getaway.
 

 Both of the Lyon brothers made confessions to the officers having them in charge at Alpena, Mich., and these confessions covered the transac
 
 *271
 
 tions that took place at the Lyon home, in Huron county, and also embraced the territory covered by the Lyon brothers in their flight from their home until the time they were arrested at Alpena. These confessions were properly identified, and were offered in evidence in the trial of James D. Lyon. Both James D. Lyon and Leonard Lyon testified for the defense in that trial. The confession made by Leonard Lyon was signed by him as written out at Alpena. The confession made by James D. Lyon was not signed by him, but was signed by the four officials in whose presence it was made, and he admitted on the trial that he had made that confession. These confessions so offered in evidence were very important items of evidence in establishing the guilt of James D. Lyon.
 

 At the beginning of the trial, the court made the following statement, as found on page 72 of the record:
 

 “I think we will now stipulate, at this t-ime, the rule that will be applied, with reference to the exercising of peremptory challenges. That rule-will be that the defendant will exercise four, or be charged with four challenges by the court, first. And then the state exercise one, or be charged with one. And so on, in blocks of four to one.
 

 “Mr. Bettig (Counsel for James D. Lyon): I. want to save an exception to that. ’ ’
 

 The examination of the jurors on their
 
 voir dire
 
 proceeded until there were twelve jurors in the panel that had not been challenged for cause. At that point counsel for Lyon made four peremptory challenges. The state thereupon challenged one juror.. Counsel for the accused then waived his.
 
 *272
 
 second four. The state then exercised one more peremptory challenge. Counsel for the accused then waived his third four. The state then exercised its third challenge. Then counsel for the accused waived his fourth four, having exercised four and waived twelve. Thereupon the state exercised its fourth peremptory challenge, and to fill the panel a juror by the name of Glenn Wood was called. Both parties were offered an opportunity to examine Wood for the purpose of learning if any challenge for cause was proper. Neither counsel for the state nor for the accused made any inquiries of the juror Wood. Whereupon the trial judge interrogated Wood to learn if any grounds existed for challenging for cause, and, finding none, was about to have the jury sworn, when counsel for Lyon said that to preserve the question in the record he would present a challenge against Wood. Asked by the court if his challenge was for cause, or peremptory, he said it was not for cause, but was peremptory. This challenge was overruled by the court and exceptions saved. The jury was then sworn, and the trial proceeded with the result as stated.
 

 As is well known, the statute gives the accused in a capital case the right to challenge peremptorily sixteen of the jury, and gives the state the right to challenge four peremptorily.
 

 The action of the trial judge in denying to the accused the right to challenge Juror Wood peremptorily is pressed upon our attention as probably the most serious error claimed in this case. It should be borne in mind that, at the time when the-panel was full and the peremptory challenges be
 
 *273
 
 gan, the accused had the full right to challenge the whole panel of twelve, even though the state had not challenged any, and the accused would still have had four more peremptory challenges to his credit to use on jurors later called. His claim is that the court, by requiring him to challenge or waive in blocks of four, thereby denied him the right to avail himself of all his challenges. It is difficult to see how he could have the right to challenge Wood after the waivers that he made, and at the same time not have the right to exercise all his other challenges not theretofore exercised which would be equivalent to saying that the court could not fix the order of challenging at all, so that the last challenge would come to the state, and that all the accused need do is to waive the right to challenge peremptorily until the state shall have exhausted its peremptory challenges entirely, and then the accused exercise all of his challenges continuously until all are used.
 

 The time at which and the manner in which peremptory challenges shall be exercised in the trial of a criminal case is not fixed by statute, and where it is not so fixed the right must be controlled by the exercise of a sound judicial discretion by the trial judge. The rule has been well stated by the Supreme Court of the United States in the case of
 
 Pointer
 
 v.
 
 United States,
 
 151 U. S., 396, 410, 14 S. Ct., 410, 415 (38 L. Ed., 208), as follows:
 

 “But the general rule is, that where the subject is not controlled by statute, the order in which peremptory challenges shall be exercised is in the discretion of the court.”
 

 In laying down this rule, the Supreme Court
 
 *274
 
 cited the case of
 
 Commonwealth
 
 v.
 
 Piper,
 
 120 Mass., 185, the case of
 
 Schufflin
 
 v.
 
 State,
 
 20 Ohio St., 233, and other cases. The
 
 Schufflin case
 
 was a first degree murder case in which counsel had been required to exercise their peremptory challenges as well as challenges for cause on each juror as he entered the box. This court said, in reviewing that practice of the trial court:
 

 “The mode of impaneling a jury in capital cases adopted by the court below has long been in practice in many counties of the state, and we see no error in it to the injury of the defendant. The law guarantees to him the rights to challenge for cause, and to make twenty-three peremptory challenges, but it leaves wholly to the discretion of the court the means and manner of administering that right. We are not prepared to say that the method adopted in this case was not reasonable and calculated to carry out substantially and fairly the provisions of the law.”
 

 If the rule laid down in the
 
 8chuff Im case
 
 carried out ‘ ‘ substantially and fairly the provisions of the law,” it is very difficult to see how any just complaint can be found with the rule adopted in the instant case. Here counsel were given an opportunity to fully examine jurors in the first place with respect to challenge for cause. There were over 100 pages of testimony taken in the impaneling of the jury, and over 70 jurors were examined. Surely, the rule adopted in the instant case is very much more liberal to the accused than the rule adopted in the
 
 Schufflin case.
 

 Counsel for Lyon base their contention on the
 
 *275
 
 case of
 
 Koch
 
 v.
 
 State,
 
 32 Ohio St., 352. In that case it was said:
 

 “When the juror Nice was called into the panel, it was a new jury, and the defendant, having up to that time exercised but one peremptory challenge, had the legal right to peremptorily challenge any one of the jurors.”
 

 The
 
 Pointer case, supra,
 
 was decided by the United States Supreme Court many years after the
 
 Koch case,
 
 and many years after the
 
 Schufflin case.
 
 The
 
 Koch case
 
 was not cited in the
 
 Pointer case,
 
 and the
 
 Schufflin case
 
 was. The
 
 Koch case
 
 involved a misdemeanor only, and no rule had been announced with respect to the order and time of making peremptory challenges, each side being entitled to two only.
 

 A majority of the court have no difficulty in reaching the conclusion that the rule, as stated by the Supreme Court of the United States in the
 
 Pointer case, supra,
 
 is the correct rule to be followed where no statutory requirement on the subject exists. This rule seems to be supported by the great weight of authority. It appears to,this court that the widest latitude was given by the trial judge in this case with respect to challenges of jurors, to the end that an entirely fair and impartial jury should be procured, and we do not find anything in the record tending to show any error prejudicial to the accused in that respect.
 

 The incompetent evidence objected to by counsel for the accused, but admitted by the court, was evidence of other crimes committed by James D. Lyon. This evidence was offered by the state and received by the court for the single purpose of
 
 *276
 
 establishing a motive on the part of Lyon, to wit, a desire to make a getaway, in the shooting of McG-rath. The court very properly and very definitely limited the consideration by the jury of this evidence to that point, mentioning the subject twice in his charge. The following decisions clearly sustain the action of the trial court:
 
 State
 
 v.
 
 Dickerson,
 
 77 Ohio St., 34, 82 N. E., 969, 13 L. R. A., (N. S.), 341, 122 Am. St. Rep., 479, 11 Ann. Cas., 1181;
 
 Shelton
 
 v.
 
 State,
 
 106 Ohio St., 243, 140 N. E., 153;
 
 Holt
 
 v.
 
 State,
 
 107 Ohio St., 307, 140 N. E., 349.
 

 We see nothing in this record to justify any charge of the trial court on the subject of assault and battery. The following authorities sustain the refusal of the court to so charge:
 
 State
 
 v.
 
 Schaeffer,
 
 96 Ohio St., 215, 117 N. E., 220, L. R. A., 1918B, 945, Ann. Cas., 1918E, 1137;
 
 Bandy
 
 v.
 
 State,
 
 102 Ohio St., 384, 131 N. E., 499, 21 A. L. R., 594;
 
 Slate
 
 v.
 
 Champion,
 
 109 Ohio St., 281, 142 N. E., 141.
 

 With reference to the error claimed by reason of overruling the supplemental motion for a new trial, the matter involved a juror by the name of Liles. The facts were brought to the attention of the trial judge by affidavit of James D. Lyon. It appeared that some time before the trial a man by the name of Jarrett, in a meeting of a board of directors at which Liles was present, offered generally to wager a box of cigars that Lyon would not die in the electric chair. As no one accepted the wager promptly, Jarrett asked Liles if he would accept the wager, and Liles said he would. When being interrogated as a juror, Liles had said nothing about this wager. The trial judge on the hear
 
 *277
 
 ing of the supplemental motion for a new trial, made a full investigation with reference to this matter, taking the evidence of Liles on the subject, in which Liles said that the incident did take place as stated in the affidavit of Lyon, but the matter had entirely escaped his mind from the time of the incident until he was made acquainted with the affidavit filed by Lyon, that it had no effect at all on him as a juror; and the trial judge found from the evidence produced that Liles was an entirely fair and unprejudiced juror in the case, and this finding of the trial judge was approved by the Court of Appeals.
 

 In view of the earnestness manifested in this court by counsel for Lyon, and his evident entire sincerity in thinking that his client had not received an entirely fair trial, and his urgent request that we read in full the charge of the court, we have made a very careful examination of the charge of the court, and of the manner of impaneling the jury as well. Our conclusion is that no fault can be justly found with either the manner of impaneling the jury or the general charge of the court. We think it is manifest in the record that the court was exercising the very greatest care to see that no right of the accused was denied him in the trial. We do not find in the charge any attempt on the part of the trial court to influence the minds of the jurors with respect to their findings of fact. The jury were distinctly told, and told several times by the trial court, that they were the sole judges of the credibility of witnesses and were the sole triers of the facts, and that the court had nothing to do with that branch of the case. We
 
 *278
 
 are not able to find any error in the charge of the trial court.
 

 The Court of Appeals not only found that the evidence justified a verdict of guilty, but they stated that the evidence clearly justified it beyond a reasonable doubt, and further stated that the evidence established the guilt of the accused beyond any doubt. The judgment of the lower courts will be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Day and Allen, JJ., concur.