ARNOLD ET AL. *v.* STATE.

(Decided June 24, 1929.)

*Mr. Nathan E. Cook, Messrs. Marsteller & La-ronge, Mr. A. D. Metz,* and *Mr. Willis Horn,* for plaintiffs in error.

*Mr. Marion F. Graven,* prosecuting attorney, and *Mr. Walter J. Mougey,* for defendant in error.

PARDEE, J.   The plaintiffs in error, Elias Arnold

and Arthur Arnold, hereinafter referred to as the defendants, as they were in the trial court, were indicted by the grand jury of said county and later convicted by a petit jury in the court of common pleas for stealing one Melvin Horst, a minor child under 12 years of age, the said Elias Arnold was sentenced to the Ohio penitentiary for a minimum period of 20 years and the said Arthur Arnold to the Ohio state reformatory for an indefinite period.

On the night of Thursday, December 27, 1928, said Melvin Horst, a boy four and one-half years of age, failed to appear at his home in Orrville in said county in time for his supper. From that time until this, the whereabouts of this boy, or his body, has been unknown.

The defendants claim that they are entitled to a reversal of the judgment, and to a new trial, for the following reasons:

First, that the state failed to prove the *corpus delicti,* as charged in the indictment.

Second, that the court erred in the admission of the evidence of one Martin N. Ramsey, the first witness the state put upon the stand.

Third, that the court erred in the admission of the evidence of one Junior Hanna, a boy less than 9 years of age, without previous initial examination by the court for the purpose of determining whether he would be a competent witness.

Fourth, that the court erred in the admission and rejection of evidence.

Fifth, that the court erred in refusing to order the prosecuting attorney to produce certain alleged written statements in his possession, signed by the said witness, Junior Hanna.

Sixth, that the verdict of the jury is not sustained by sufficient evidence and is manifestly against the weight thereof.

The state claimed at the trial that the defendants, believing said boy to be the son of Roy Horst, the marshal of the village of Orrville, kidnapped him in a spirit of revenge and "to get even" with said marshal for having caused the defendants, and other members of their family, to be arrested many times, and for having caused them to be convicted, imprisoned, and fined.

Melvin Horst was not the son of Roy Horst, but was the son of his brother, Raymond Horst; but the state claimed that the defendants did not know of this fact and acted upon the assumption that he was the son of the town marshal who had caused the arrests aforesaid; the said defendant Elias Arnold being the father of the defendant Arthur Arnold, 17 years of age, and the immediate family of said Elias Arnold being composed of his wife, said son, and other sons and daughters.

After the disappearance of said boy, which aroused a great deal of excitement throughout the county, many searching parties were organized, and for days and weeks constant effort was made to find the boy, either alive or dead, but without results; but after diligent investigation by the prosecuting attorney and his assistants and other officers of the county and others, the two defendants, and William Arnold, a son of said Elias Arnold, and Dorothy McHenry, a daughter, and her husband, Bascom McHenry, were indicted by the grand jury, the indictment against William Arnold, Bascom McHenry, and Dorothy McHenry being subsequently nollied.

First, was there any evidence in the case of the *corpus delicti?*

This alleged error should not be set up as a separate ground for a reversal of the judgment, but should be and will be considered in connection with and as a part of the sixth ground hereinbefore stated, to wit, that the judgment is not sustained by sufficient evidence and is manifestly against the weight thereof.

The second error relied upon by the defendants relates to the admission of the testimony of the first witness put upon the stand by the state, one Martin N. Ramsey, of Columbus, Ohio, assistant psychoanalyst at the State Juvenile Bureau of Research, who testified that on the 23d day of January, 1929, he made an examination of the children at the Wayne county children's home, one of the children being Junior Hanna, one of the witnesses for the state, who subsequently testified, he having been detained in said home as a material witness in this case after the defendants were arrested; and, over the objection and exception of the defendants, said Ramsey was permitted to testify that at the time of said examination Junior Hanna was 8 years and 7 months old, but that under the standard for mental age tests he registered 9 years and 7 months; and the court said: "This is allowed with the understanding that this boy is testifying as a witness; it is admitted only for the purpose of enabling the jury to determine what weight may be given to his testimony on account of his age."

This alleged error must be considered with the testimony of other witnesses who testified in chief for the state, but without objection or exception by

defendants, that said witness Junior Hanna was a truthful and obedient boy—some of which evidence was allowed to go to the jury before said witness had been called and examined, and some after he had testified.

At no time during the trial did the defendants, by direct effort, attempt to impeach the credit of said witness Junior Hanna. The most they did was that which would be expected in the ordinary cross-examination of an important witness.

Junior Hanna was the pivotal witness in the state's case, and without his testimony there would be no evidence of any kind connecting the defendants with the crime with which they are charged.

When the witness Ramsey was called and was permitted to testify, he stated that he had, by mental examination, determined Junior Hanna to be mentally one year older than his actual age, and the court stated to the jury that this evidence was received, not for the purpose of determining whether the witness was competent to testify, which was a matter to be determined by the court, but for the purpose of enabling the jury to determine what weight should be given to his testimony.

The reception of this evidence by the court, at the time and under the circumstances disclosed by the bill of exceptions, was erroneous and prejudicial, as this kind of evidence was incompetent for the purpose of aiding the jury in determining the weight to be given to the testimony of said witness. *Webb* v. *State, infra,* 29 Ohio St., 351.

The next error alleged arises out of the reception of the evidence of the said Junior Hanna without

previous initial examination of him by the trial court.

The record shows that when this witness was called for examination he was duly sworn, and testified without any objection being made by the defendants as to his competency, and that the defendants did not make any effort at the conclusion of his testimony to have the trial court exclude the same from the consideration of the jury.

From an examination of his testimony, as disclosed by the bill of exceptions, there was no error in permitting this boy to testify without a preliminary examination by the court to determine his competency. His testimony demonstrates that he was not incapable of receiving just impressions of the facts and transactions respecting which he was examined, and of relating them truthfully.

The next alleged error relates to the admission and rejection of evidence.

One of these complaints relates to the admission of evidence as to the numerous arrests and convictions of the defendants and members of their immediate family by the said Roy Horst, the marshal of the village of Orrville, said arrests being for offenses distinctly dissimilar to the offense charged in the indictment. This evidence was offered to prove motive, or, in other words, the compelling force which it is claimed actuated the defendants to commit the crime charged.

"It is obvious that in every criminal trial, when proof of motive is an essential ingredient of the evidence against a defendant, the motive to be established is the one which induced the commission of the crime charged. This is too simple for discus-

sion. To hold otherwise would be to sanction the violation of the general rule under the guise of an exception to it." *People* v. *Molineux*, 168 N. Y., 264, at page 294, 61 N. E., 286, 294, 62 L. R. A., 193.

The theory of the state's case was that the defendants stole said Melvin Horst out of revenge and for the purpose of punishing Roy Horst, the town marshal, who, the state claims, the defendants thought was the father of Melvin Horst, the lost boy.

It is everywhere recognized in criminal jurisprudence that where motive is claimed, and is properly received in a criminal case, it must be the motive which underlies the crime charged; and where the commission of other crimes is the underlying motive, as in the instant case, the reception of evidence of other crimes does not violate "the general rule of evidence applicable to criminal trials * * * that the state cannot prove against a defenjdant any crime not alleged in the indictment, either as a foundation for a separate punishment, or as aiding the proofs that he is guilty of the crime charged." *People* v. *Molineux, supra,* 168 N. Y., at page 291, 61 N. E., 293, 62 L. R. A., 193.

In this connection it should be kept in mind that there is a wide difference between motive and intent.

"In the popular mind intent and motive are not infrequently regarded as one and the same thing. In law there is a clear distinction between them. Motive is the moving power which impels to action for a definite result. Intent is the purpose to use a particular means to effect such result. When a crime is clearly proven to have been committed by

a person charged therewith, the question of motive may be of little or no importance. But criminal intent is always essential to the commission of crime. There are cases in which the intent may be inferred from the nature of the act. There are others where willful intent or guilty knowledge must be proved before a conviction can be had." *People* v. *Molineux, supra,* 168 N. Y., at page 297, 61 N. E., 296, 62 L. R. A., 193.

So, as in this case, motive and intent must not be confounded, and the rules of law applicable to proving intent cannot be applied in all cases to criminal prosecutions where motive is involved. So, the complaint by the defendants, that the court's failure properly to caution the jury at the time of the reception of the evidence showing the several arrests and convictions of the defendants and other members of their family was prejudicial, cannot be sustained; as the purpose for which the evidence was received was solely to prove motive. Therefore, the reasons set forth in the books, and in the citations in defendants' briefs as to the reception of evidence to prove intent, do not apply with equal force and effect to the reception of evidence to prove motive, or in cases involving identity.

In a recent case decided by the Supreme Court of this state, entitled *Lyon* v. *State,* 116 Ohio St., 265, 155 N. E., 800, the court held in the second syllabus: "2. In the trial of a criminal case, evidence of other criminal conduct of the accused may be admitted in evidence for the purpose of showing the motive of the accused attending his action with respect to the crime for which he is being tried. The trial court by instructions to the jury should defi-

nitely limit the purpose for which such evidence is received."

And in the opinion, the court said, 116 Ohio St., on pages 275 and 276, 155 N. E., 803: "The incompetent evidence objected to by counsel for the accused, but admitted by the court, was evidence of other crimes committed by James D. Lyon. This evidence was offered by the state and received by the court for the single purpose of establishing a motive on the part of Lyon, to wit, a desire to make a getaway, in the shooting of McGrath. The court very properly and very definitely limited the consideration by the jury of this evidence to that point, mentioning the subject twice in his charge."

See, also, *Shelton* v. *State,* 106 Ohio St., 243, 140 N. E., 153.

But the Supreme Court held in the case of *State* v. *Davis,* 90 Ohio St., 100, 106 N. E., 770, as to proving intent:

"2. In proving such corrupt intent, other similar offenses, tending to show the corrupt course of dealing of a public official, may be shown as tending to prove the specific corrupt intent charged in the indictment.

"3. At the time such proof is offered, the trial judge should limit its competency to the specific intent charged in the indictment, and, if reference be made thereto in the charge, the same limitation should be made by the trial judge."

See, also, *Baxter* v. *State,* 91 Ohio St., 167, 110 N. E., 456.

But as to identity, it was expressly held in the case of *Barnett* v. *State,* 104 Ohio St., 298, 135 N. E., 647, 27 A. L. R., 351, that the "trial court at the

time of the introduction of such evidence, or in its general charge, should limit the application of such evidence by the jury to such purpose."

So, we are of the opinion that the trial judge did not commit error when he did not caution the jury at the time of the reception of the evidence in relation to motive that it was being received solely for the purpose of proving motive. The caution contained in the general charge, in our opinion, was therefore sufficient, under all the circumstances, to safeguard the rights of the defendants.

The defendants also complain about the latitude permitted by the trial court in the cross-examination of the defendant Elias Arnold, when he offered himself as a witness.

This was part of the cross-examination relating to what was said by Elias Arnold in reference to the other crimes for which he was arrested and to which he entered a plea of guilty. The admission of this evidence, over the objection and exceptions of the defendants, was erroneous and prejudicial.

Another complaint made by the defendants relates to the refusal of the trial court to require the prosecuting attorney to produce certain alleged written statements made by the witness Junior Hanna, which statements were claimed by the defendants to be in the possession of said attorney.

The bill of exceptions in regard to this matter is indefinite and uncertain, but we are of the opinion that the trial court did not commit any error in its ruling in regard thereto. *State* v. *Rhoads,* 81 Ohio St., 397, 91 N. E., 186, 27 L. R. A. (N. S.), 558, 18 Ann. Cas., 415, and *State* v. *Yeoman,* 112 Ohio St., 214, 147 N. E., 3.

The next alleged error relates to the claim that the verdict of the jury is not sustained by sufficient evidence and is manifestly against the weight thereof.

As has been said, the question of the guilt of the defendants depends upon the testimony of 8-year-old Junior Hanna. There are circumstances in connection with his testimony which naturally cast doubt upon its reliability, and especially is that so where a 20-year sentence in the Ohio penitentiary is based almost solely upon that evidence.

As soon as it was learned that Melvin Horst had disappeared, there was diligent search made to find him and all the children of the neighborhood were inquired of as to when they had last seen him, and among those so inquired of was Junior Hanna. The same evening and within a few hours after the disappearance, and when neighbors were so searching and inquiring, Junior Hanna was asked, in the presence of his mother, whether he had seen Melvin Horst, and he then failed to tell that he had seen him or that he knew anything about his disappearance, and for five days, while the said disappearance was the one absorbing subject of inquiry and investigation in the neighborhood, and while his playmates and he himself to some extent joined in the search being made, he did not disclose to his father or mother or his playmates or any one that he knew anything about the disappearance of Melvin Horst. The first disclosure he made was when he was alone with a detective five days after the disappearance, and then he told only a small part of the story he told upon the witness stand. It was two weeks later, and after he had been placed in

the children's home, and after, as he says, he had learned of God, that he told of having seen the defendants take and carry away Melvin Horst.

As to the testimony of children of tender years, it has been said by a leading authority on evidence that: "It may be urged that the natural language of a child is that of innocence and truth, and that its testimony is ordinarily free from the prejudice or sinister motives which too often affect the testimony of adults. On the other hand, it may be urged with equal force that this class of testimony is open to several serious objections. There is the uncertainty whether the witness has a proper conception of the obligation to tell the truth. Then there is the still greater danger that such testimony may have been prompted and inspired by unscrupulous and interested persons." 5 Jones Commentaries on Evidence (2d Ed.), Section 2109.

Another great author on the law of evidence has observed that a child may know, in a general way, the meaning of an oath, and therefore be competent as a witness, long before the child has any real notion of the practical importance of his evidence in a temporal point of view, and also long before he has learned to distinguish between his memory and his imagination, or to understand what is meant by accuracy of expression, and has pointed out that, as to the evidence of a child of tender years, it "is hardly possible to cross-examine a child, for the test is too rough for an immature mind. However gently the questions may be put, the witness grows confused and frightened, partly by the tax on its memory, partly by the strangeness of the scene; and the result is that its evidence goes to the jury prac-

tically unchecked, and has usually greater weight than it deserves, for the sympathies of the jury are always with it. This is a considerable evil, for in infancy the strength of the imagination is out of all proportion to the power of other faculties; and children constantly say what is not true, not from deceitfulness, but simply because they have come to think so, by talking or dreaming of what has passed. The evil, however, is one which the law cannot remedy. It would be a far greater evil to make children incompetent witnesses up to a certain age. The only remedy is that judges should insist to juries more strongly than they generally do on the unsatisfactory nature of the evidence of children and on the danger of being led by sympathy to trust in it.'' General View of the Criminal Law of England, by J. F. Stephen.

After a careful consideration of all of the evidence, a majority of the members of this court are of the opinion that the finding that the defendants were guilty beyond a reasonable doubt is manifestly against the weight of the evidence; and while we do not and cannot reverse upon that ground, because one member of the court is of the opinion that the finding of the jury is not manifestly against the weight of the evidence, all are agreed that the evidence as to the guilt of the defendants is such as to render errors of law occurring during the trial prejudicial which might not otherwise be so, and that this reviewing court should consider said errors in connection with the whole record for the purpose of determining whether the justice of the case requires a reversal of the judgment.

As has been pointed out, some of the evidence that

was introduced to sustain the intelligence of the witness Junior Hanna and establish his truth and veracity was not objected to, nor were exceptions noted; and, as has also been pointed out, some of this evidence was introduced before Junior Hanna was called as a witness, and at no time was there any evidence introduced for the defense, seeking to impeach the good character or reputation of said witness for truth and veracity; and, further, as has been pointed out, such evidence was clearly incompetent.

"Where the only impeachment of the witness consists of conduct or of statements made at other times inconsistent with his testimony, the better rule, in our opinion, is not to allow proof of his general character or reputation for truth for the purpose of sustaining his credit." *Webb* v. *State,* 29 Ohio St., 351, at page 357.

The question remains: Was this error prejudicial in view of the fact that in many instances no exceptions were taken to the introduction of the evidence?

We have stated the rule in a similar situation to be as follows: "If errors occur at the trial of either a civil or criminal case, and no exceptions are taken thereto, a reviewing court cannot reverse solely for such errors; but if a motion for a new trial, containing the ground that the verdict is contrary to law, is overruled and exception noted, a reviewing court will consider said errors in connection with the whole record for the purpose of determining whether the justice of the case requires a reversal of the judgment." *Sabo* v. *State,* 29 Ohio App., 200, 163 N. E., 496, 499.

In the instant case, the testimony of the witness

Junior Hanna being the only direct evidence of the guilt of the defendants, and a majority of the court being of the opinion that the guilt of the defendants has not been established by that degree of proof which the law requires, and all members of the court being of the opinion that the evidence as to the guilt of said defendants is such as to render errors of law occurring at the trial prejudicial which might not otherwise be so, we find that the error in permitting evidence to bolster up and sustain said witness, both before and after his testimony, renders the judgment in this case contrary to law.

In conclusion, we wish to say that we have only words of commendation for the diligence and perseverance with which the prosecuting attorney and his assistants have endeavored to solve the mysterious disappearance of said Melvin Horst.

For the errors which occurred during the trial of this case, which we find to be prejudicial, we unanimously reverse the judgment and remand the case to the trial court for further proceedings as provided by law.

*Judgment reversed and cause remanded.*

FUNK, P. J., and WASHBURN, J., concur.