## TATU et v STATE

Ohio Appeals, 8th Dist, Cuyahoga Co

No 12577. Decided June 13, 1932

F. J. Cook, Cleveland, for plaintiff in error.

P. L. A. Lieghley, Cleveland, for defendant in error.

VICKERY, J.

From the oral statements that were made by Adams and Mrs. Stocker and the written statements or confessions made by them, it seems that Mrs. Tatu bought two gallons of gasoline for the purpose of taking it over to the house in Bedford to be used in the destruction of the same. This was denied by the Tatus and, I believe, Mrs. Stocker subsequently denied it likewise. Practically the only evidence that there was to connect the Tatus with this fire were the statements made by Adams and Mrs. Stocker and it was offered by the State and admitted by the court on the theory that there was a conspiracy and that the statements made by one co-conspirator could be introduced in evidence against any one of the co-conspirators. This seems to be on its face a sound proposition of law and undoubtedly is in accordance with the authorities, but before statements of co-conspirators can be used against the absent ones, there must be evidence aliunde to prove the conspiracy. In other words, there must be evidence besides the declaration of the conspirators, that a conspiracy existed.

To support this proposition we cite from the opinion of Judge Crow in the case of **Hammond v State, 78 Oh St, 15, at page 23** as follows:

"Until the conspiracy is shown by other and independent evidence the acts and declarations of an alleged co-conspirator are inadmissible to establish the connection with such conspiracy of one charged as a co-conspirator."

See also Jones Commentaries on Evidence, Volume II, §943: "But in such cases it must first be proved, by other evidence, that a conspiracy existed at the time the declarations were made." And Jones, to support this proposition cites a great line of authorities, which apparently state the general doctrine of the admissibility of statements of alleged co-conspirators.

In this case there is a dearth of evidence to show a conspiracy outside of the confessions. The writer of this opinion, from all the circumstances of the case, has a shrewd suspicion that such a conspiracy did exist, but it must be proven in accordance with the rules of law and the proof must be legally admissible.

But assuming that there was at least prima facie evidence aliunde of a conspiracy, then, in order to make the statements of an alleged co-conspirator admissible, they must have been made in furtherance of the conspiracy and, in a measure, aid in carrying it out, and they must be made before the purpose of the conspiracy is carried out. All the authorities seem to be to the effect that even though the conspiracy be established by evidence aliunde, in order to make the declarations of a co-conspirator admissible, they must be made while the conspiracy is in progress and in furtherance of the purpose to be carried out by the conspiracy.

See Jones on Evidence, §943: "Even if a conspiracy is shown aliunde, the declarations of one conspirator are not admissible against the others, if made after the common design is accomplished or abandoned."

See also **Ohio Jurisprudence, Vol. 12, §390:** "To warrant the admission of the acts or declarations of a co-conspirator, it must be shown that they were made in furtherance of a common design or purpose." Citing **Umbenhauer v State, 4 O. C. C., 378; Donald v State, 21 O. C. C., and Clawson v State, 14 Oh St 234.**

Now it is important to bear these authorities in mind, in view of the circumstances of the present case, because the statements, both oral and written, that were introduced in this case were made after the carrying out of the conspiracy; that is, after the burning of the building was completed, and Stocker had died of burns which he had received in starting this fire.

From all the authorities that we have cited, and many more that we could recite, it seems that not only must the statements be made in furtherance of aiding and accomplishing the purpose of the conspiracy, but they must be made while the conspiracy

is in progress; that any statements made by an alleged conspirator after the object has been accomplished amounts to only a confession of his, and if it is not made in the presence of, or acquiesced in by, the other co-conspirators, it is inadmissible against anybody except the person who made it.

Now if these written statements and the verbal statements that were made are scrutinized, one can see that they partake of the nature of confessions, and inasmuch as none of them were made in the presence of the two plaintiffs in error, under the authorities we do not see how they could be admissible. In fact the authority is positive the other way; that where the statements are made not in furtherance of and in carrying out the purpose of the conspiracy and while it was in progress, but after the purpose had been accomplished or "abandoned," as the cases say, the statements made by alleged co-conspirators in the absence of the others is evidence only against those who make the statements, and they are inadmissible against those who did not make them. As authority for this proposition we quote from Ruling Case Law, Volume I, §620, as follows:

"After the accomplishment or abandonment of the common design, no declaration of a conspirator will affect another; and such declarations if offered in evidence should be excluded."

In The People of The State of New York v McQuade, 110 New York Reports, page 234, the syllabus reads:

"While the acts and declarations of a co-conspirator, done in furtherance and execution of the common design, are admissible against a conspirator on trial for the common offense, when the conspiracy is at an end and its purpose accomplished or abandoned, no subsequent act or declaration of one of the conspirators is admissible against another."

That authority is squarely in point with the instant case, as is also the case of Spies et v The People of The State of Illinois, 122 Ill. Rep. page 1, and we quote syllabus 31:

"After a conspiracy has been established, only those declarations of each member, however, which are in furtherance of the common design can be introduced in evidence against the other members. Declarations that are merely narrative as to what has been done or will be done, are incompetent, and should not be admitted except as against the defendant making them, or in whose presence they were made."

These authorities seem to be conclusive of what a reviewing court must do in this case. There is, as already stated, no evidence, practically speaking, to hold the Tatus for this arson, inasmuch as they were not present and did not participate in the burning except the declarations of the co-conspirators, if there was a conspiracy; and those declarations are not in furtherance of the carrying out of the design of the conspiracy, but rather would hinder and prevent carrying it out, if it had not already been carried out, but as a matter of fact were made after the completion of the conspiracy, and are, therefore, merely statements that would bind the individuals that made them, or those in whose presence they were made; and it is conceded in this case that the Tatus were not present when these statements were made, and that they were made as shown by the record after the completion of the offense.

It was rather unfortunate in this case inasmuch as Mrs. Stocker, who was jointly indicted with Adams and the Tatus, was acquitted by the jury on the theory that she did not understand what was going on, and was under the coercion of her husband, that immunity had not been granted to her so that she could have been used as a witness. Had she told the story on the witness stand that she made in her statement, it might have shown a conspiracy which undoubtedly existed in this case, so that the Tatus could have been convicted.

From the situation in this lawsuit, as we gather it from the record and from the arguments, all these persons stood to gain by the burning of this house in Bedford. It is true that it was mortgaged for Twenty-One Hundred Dollars, but after these sums were paid,—if the Nine Hundred Dollar or second mortgage was a beneficiary of these insurance policies,—there were still Nine Hundred Dollars that would be coming to the Tatus, because the fire has entirely destroyed the building and it was a total loss. The second mortgage of Nine Hundred Dollars was a sum of money that was loaned to the Tatus for the purpose of carrying on a dairy business, and the insurance would have paid this loan and left the business free, and it would have provided a fund of Nine Hundred Dollars to have paid the Stockers and Adams for the work that they had done of the farm, for which they had not received pay; so all the persons who entered into this conspiracy, if there were

one, were mutually interested in it, and the fact that the Tatus made an application for the payment of this insurance without telling the Insurance Company anything about the circumstances,—for they knew at the time that Stocker had died from the effects of burns received in this place for he was brought back to the home of the Tatus in Twinsburg, so they must have had knowledge of the fire when they made application for the insurance money,—all bears out the theory of the State that there was a conspiracy, and maybe there is enough in the record to show, outside the confessions themselves at least prima facie, that there was a conspiracy.

But even if that were so, under the authorities cited, the admission of these statements and the oral testimony which recite what had taken place after the commission of the offense was in no wise admissible, and it was such error to admit them that this court can do nothng but to reverse the judgment, and feeling that perhaps the State will be able to procure other evidence, we will content ourselves with reversing this judgment and remanding the case for a new trial.

It is claimed in this case by the State that there were no exceptions taken to the overruling of the objection to the admission of the statements of the co-conspirators in evidence against the plaintiffs in error. This is answered by a reference to the new Criminal Code §13442-7, GC, which in effect provides that when an objection to the introduction of testimony is made and overruled, even though no express exception is taken it is available to the objecting party. Therefore this contention is not of much import. We think on the whole record that the judgment must be reversed and the cause remanded for a new trial.

LEVINE, PJ, and WEYGANDT, J, concur.