## The State of Ohio, Appellee, *v.* Hollos et al., Appellants.

(No. 4035—Decided July 12, 1944.)

*Mr. Joel S. Rhinefort,* prosecuting attorney, *Mr. Jerome Jesionowski* and *Mr. Edward P. Buckenmyer,* for appellee.

*Messrs. Hackett & Lynch,* for appellant August A. Hollos.

*Mr. Mark Winchester,* for appellant Lloyd H. Mercer.

CARPENTER, J. In a joint indictment it was charged that the defendants, August A. Hollos and Lloyd H. Mercer, conspired to and did on April 20, 1943, perform an abortional operation upon Lucille Denesik from which she died on May 10, 1943. On trial, both were convicted and from that judgment separate notices of appeal on questions of law brought the case to this court.

The separate assignments of error, in most respects, raise the same questions. One group of these relates to the admission of evidence concerning a similar transaction by defendants, the operation of which was alleged to have taken place at Monroe, Michigan, about the same time as the Denesik incident. The evidence in both cases tends to prove that by concerted action the operation was performed crudely by defendant Hollos, who was not licensed in any medical practice in Ohio, and that the care of the patients before and after the operation was handled by defendant Mercer, who was a licensed medical doctor in Ohio.

Conspiracy, though pleaded, was not an integral part of the offense charged, which was that Hollos and Mercer committed the abortion. In Ohio we have no criminal conspiracy. The conspiracy element in pleading and proof is important only as it may extend the liability for the wrong done by the unlawful act of the one to the other who did not commit such act, if it was done in pursuance of a conspiracy to which both were parties. In other words, it creates liability against one when, in the absence of the conspiracy, it could only be several against the one who actually did

it—hence the importance of the proof of the conspiracy between these defendants, if such existed.

To prove that both defendants had a part in the commission of the alleged crime as to Lucille Denesik, it was necessary for the state to prove, as was alleged, that they conspired to do it, and to do this the evidence of the similar Monroe transaction was offered to show the scheme or pattern of their procedure.

Section 13444-19, General Code, makes competent evidence of such other acts for that purpose. That statute is a codification of a well-established common-law principle, which was applied in *Barnett* v. *State,* 104 Ohio St., 298, 309, 135 N. E., 647, 27 A. L. R., 351, and *Lyon* v. *State,* 116 Ohio St., 265, 155 N. E., 800. In *Scott* v. *State,* 107 Ohio St., 475, 141 N. E., 19, and *Curtis* v. *State,* 113 Ohio St., 187, 192, 148 N. E., 834, it was pointed out that substantial evidence of such other offenses was all that is required, *i. e.,* not proof beyond a reasonable doubt.

It is complained that the court, at the time this evidence was received, did not limit the jury in the use of it to that purpose. In *Clyne* v. *State,* 123 Ohio St., 234, 174 N. E., 767, it is suggested that this "statute does not expressly limit the jury's consideration of the evidence of other like acts to their bearing on the question of such * * * scheme." But even if such limitation was in order, at no time did either defendant request the court to impose such limitation, and unless so requested, its absence was not error. *Patterson* v. *State,* 96 Ohio St., 90, 104, 117 N. E., 169, L. R. A. 1918A, 583; *Nappi* v. *Wilson,* 22 Ohio App., 520, 526, 155 N. E., 151; *Morton* v. *Murry,* 20 C. C. (N. S.), 481, 29 C. D., 635.

Both defendants stood squarely upon their contention that such evidence was not proper for any purpose. In its general charge to the jury the court did

properly limit the use the jury could make of evidence of other crimes.

Defendant Hollos offered himself as a witness in his own defense and testified at length as to his past life, and denied that he knew, ever saw or ever had anything to do with Lucille Denesik. On cross-examination, he was asked about phases of the Monroe affair and refused to answer any questions that had any connection with it on the ground that his answers might incriminate him in that case. The court overruled his objections and those of his counsel and insisted that he answer the questions. Notwithstanding the court's orders and even his attorney's advice that he answer, he continued to refuse to do so and finally answered all, "stand mute."

He and his counsel based his refusal on Section 10, Article I of the Constitution of Ohio—"No person shall be compelled, in any criminal case, to be a witness against himself."

From the indictment and the issues it presented, and from the state's evidence in chief, defendant Hollos knew that this material issue was in the case and he could have avoided questions about it by not taking the stand, and the Constitution would have protected him in so doing—no one could have compelled him to testify. In this respect his rights were different from and superior to those of an ordinary witness who, under subpoena, could be required to take the stand and testify on material issues. Such witness could then avail of this constitutional protection and refuse to give answers to questions which he thought might be used to incriminate him.

The precise question here is: Could the accused Hollos, having taken the stand in his own defense and testified generally on the issues on which he wished to speak, refuse to answer questions on the material subject of the Monroe incident because his testimony

thereon might tend to connect him with another crime?

The defendant having made himself a witness, inquiries testing his credibility as a witness were in order. *Hanoff* v. *State,* 37 Ohio St., 178, paragraph one of syllabus, 41 Am. Rep., 496; *Sabo* v. *State,* 119 Ohio St., 231, 242, 163 N. E., 28.

The Monroe affair was not merely a collateral crime, and the inquiry concerning it was not made merely to affect his credibility. It bore upon the ultimate issues in this case.

The particular question thus presented in this record has not been directly answered by the reported decision of any court in this state, but it has been considered in other jurisdictions. Michigan has a similar provision in its Bill of Rights, and its Supreme Court in *People* v. *Dupounce,* 133 Mich., 1, 94 N. W., 388, 103 Am. St. Rep., 435, 2 Ann. Cas., 246, held that when the accused takes the stand in his own behalf, he waives his constitutional right to refuse to answer any questions material to the case, though the answers to such questions tend to prove him guilty of some other crime than that for which he is on trial. This principle was recently reiterated in *People* v. *Koukol,* 262 Mich., 529, 247 N. W., 738, 87 A. L. R., 878. That this is the general rule is indicated in the numerous cases cited in the note to the report of the *Dupounce case* in 2 Ann. Cas., 247, and such is the rule in the federal jurisdiction. *Raffel* v. *United States,* 271 U. S., 494, 70 L. Ed., 1054, 46 S. Ct., 566.

The state offered in evidence and the court received over the objections of both defendants, a black leather bag containing numerous instruments, which was taken from Hollos by a police officer in connection with the Monroe transaction wherein the evidence indicated he had used some instruments taken from the bag in the two operations alleged to have been performed on that subject. There was also evidence that he had that

bag in his possession when it was contended he operated upon Lucille Denesik. A doctor testified that the instruments in the bag were such as were used by doctors in vaginal and womb operations. With the state of the evidence connecting this bag with the alleged operations and the identification of the use made of the instruments in it, the court did not err in receiving it in evidence.

Defendant Hollos was arrested by the Michigan authorities on an abortion charge in connection with the Monroe case. Over the objection of Mercer, the police officer who arrested Hollos was permitted to testify at length in the state's case concerning a statement Hollos made in the absence of Mercer in the office of the prosecuting attorney of that county about his connection with the subject of that alleged abortional operation.

In rebuttal the stenographer in that prosecutor's office who took in shorthand the Hollos statement, over the objection of Mercer, testified also as to the contents of that statement.

A Toledo police officer, Ralph Murphy, who investigated the Denesik case, questioned Hollos after his arrest at length about that case in the absence of Mercer, and was permitted to testify as to the statements then made by Hollos.

The court in no way confined the jury's consideration of all this statement evidence to Hollos, but it did overrule several timely-made motions by Mercer to exclude it as to him. That was clearly prejudicial error as to Mercer. Granting that the evidence of conspiracy was sufficient to warrant the admission against both defendants of evidence of acts done and statements made by either in the absence of the other in furtherance of the purpose of the conspiracy, subsequent statements made by one in the absence of the other were not admissible against the absent one. *Pat-*

*ton* v. *State,* 6 Ohio St., 467, paragraph two of the syllabus; *Fouts* v. *State,* 7 Ohio St., 471; *Preston* v. *Bowers,* 13 Ohio St., 1, 13, 82 Am. Dec., 430; *Clawson* v. *State,* 14 Ohio St., 234; *Tatu* v. *State,* 43 Ohio App., 68, 182 N. E., 681.

One of the most seriously urged assignments of error is "misconduct of the prosecuting attorney and abuse of discretion by the court."

Many of the complaints in this respect relate to or are connected with the evidence of the Monroe, Michigan, case. While the arguments over the admissibility of this was at times strenuous, as indicated above, the state was within its rights in offering it, and the court did not err in admitting it.

All through the trial many objections were made to the leading-character of the state's questions and to side remarks made in the presence of the jury by the prosecuting attorney about the evidence or the witnesses. In both of these respects the prosecutor was, to say the least, exceedingly careless and more or less persistent. This court has often expressed its disapproval of such trial tactics and pointed out the duty of the trial court to use measures to effect its discontinuance. *Machaterre* v. *Dusha,* 30 Ohio App., 242, 164 N. E., 783.

Of the frequent occurrences of these things and of the manner in which the court handled them, a fair illustration is the following quoted from the record of the cross-examination by the prosecutor of defendant Mercer when a card bearing his pencil record of the Denesik case was under consideration:

"Q. I notice this is in pencil, this record that you have? A. I got ten thousand like it in pencil.

"Q. And you make all those in pencil? A. Practically.

"Q. Well, you are the first doctor I knew that—to make it in pencil.

"Mr. Winchester. To that we object and ask to strike it.

"The Court: It may go out.

"Mr. Winchester: I think this gentleman ought to be told, if the court please, the remarks he made should not be made.

"The Court: I will tell you, I will tell you to make your objection and then stop. You object, I sustain your objection, and instruct the jury to disregard the remark of the attorney. Now that should be sufficient.

"Mr. Winchester: No, it isn't quite, if the court please, I—

"The Court: All right—

"Mr. Winchester: Sir?

"The Court: I haven't concluded. It isn't necessary for you attorneys to comment upon any ruling of the court after the ruling.

"Mr. Winchester: I wasn't commenting upon the ruling, if the court please. I was just suggesting that the court might—

"The Court: Now, if you are making further suggestions, it will require the court, then, to instruct the jury to disregard your suggestions.

"Mr. Winchester: All right.

"The Court: So you don't say anything—

"Mr. Young: I move for a mistrial, Your Honor.

"The Court: Upon what ground?

"Mr. Young: Upon the ground that the prosecutor has continually made these improper remarks.

"The Court: Well, the court has continually told the jury to disregard the remarks made by the attorneys, whether they are deemed improper by the court. Again I tell you to disregard the remarks made by counsel one to the other or to the court, or the court back to counsel. Your duty, as I have told you before, is to listen to the witness, the words which come from the mouth of the witnesses is the evidence in the case.

"Mr. Young: Will the court please rule on my motion?

"The Court: You may proceed.

"Mr. Young: Will the court please rule on my motion?

"The Court: Overruled—Exception."

A more specific and serious instance of such error occurred when the state called as a witness Sergeant Margaret M. Slater, Head of the Women's Bureau of the Toledo Police Department, and inquired about her contacts with Hollos on two occasions, both of which were in 1937. On one of these she said she called upon him as a "supposed patient" with a state medical inspector to arrange for massage and chiropractic treatments. It was apparent that this was some effort by the State Medical Board to entrap Hollos for unlicensed practice. The court ordered the testimony stricken, apparently because it was all so indefinite, remote and irrelevant.

The other contact was on August 3, 1937, when she took her stenographer with her to see Hollos in connection with a police investigation of "a note found on a girl's body that had died in the County Hospital with Mr. Hollos' name on it." With the impression that this was something and that the stenographer would be called to testify, this witness was excused by the state. A motion to strike this testimony was overruled. The stenographer was not called and no effort was made to present any further evidence on this subject.

The net result of the vague testimony of the witness Slater could very well have been an impression in the minds of the jurors that as long ago as 1937 Hollos was, (1) engaged in unlicensed or illegal medical practice; and, (2) under suspicion in connection with the death of a girl at County Hospital, where Lucille Denesik had died.

No justification is apparent for the prosecuting attorney presenting such an unfair and prejudicial situation as thus resulted. There are times when a witness may not testify as counsel may expect, or prove not to have admissible information, but there could be no excuse for the office of the prosecuting attorney not knowing what Sergeant Slater, an officer of the state, knew about Hollos, and the court should have excluded the incident of the death note. Even the court's admonition to the jury, had it been given in such a situation, could hardly have erased the poison that may have been left by her testimony about these two incidents.

Various other assignments of error are urged, including the sufficiency of the evidence, but none of these appears prejudicial.

For the reasons stated the judgment is reversed and the cause is remanded to the Court of Common Pleas for a new trial.

*Judgment reversed and cause remanded.*

LLOYD and STUART, JJ., concur.