FROMM *v.* THE STATE OF OHIO.

(Decided March 24, 1930.)

*Mr. James Connell, Mr. Oscar M. Abt* and *Mr. Faber Drukenbrod,* for plaintiff in error.

*Mr. Ray T. Miller,* prosecuting attorney, and *Mr. P. L. A. Lieghley,* for defendant in error.

VICKERY, P. J.   This cause comes into this court

on a petition in error to the common pleas court of Cuyahoga county, in which court the plaintiff in error, Charles A. Fromm, was convicted of soliciting a bribe and was sentenced to the Ohio Penitentiary in accordance with law, and it is to reverse that judgment of conviction that error is prosecuted to this court.

Two several grounds are urged in this court why this judgment is erroneous and should be reversed.

From the record, arguments of counsel and briefs in this case we learn that Charles Fromm was the duly elected, qualified, and acting county commissioner for the county of Stark, in the state of Ohio, and that, while acting as such commissioner, and in his office as such commissioner, he solicited a bribe from one John Keefe. The indictment under which this prosecution was had is as follows:

"The State of Ohio, Cuyahoga County, ss.:

"Of the term of September in the year of our Lord one thousand nine hundred and twenty-nine.

"The Jurors of the Grand Jury of the State of Ohio, within and for the body of the County aforesaid, on their oaths, in the name and by the authority of the state of Ohio,

"Do find and present, that Charles Fromm on the 22nd day of August 1929 at the County aforesaid, being an officer of the County of Stark, State of Ohio, to wit, a member of the Board of County Commissioners of said County, duly elected, acting and qualified, unlawfully and corruptly did solicit from one John Keefe certain money of the amount and value of four hundred dollars ($400.00), for the purpose and with the intent to influence him, the said Charles Fromm with respect to his official duty,

to wit, with respect to his action, vote, opinion and judgment in a matter that might legally come before him, the said Charles Fromm as such officer and the said Board of County Commissioners of said County, of which said Board the said Charles Fromm was then and there a member, as aforesaid, to wit, a resolution approving the payment of certain moneys for hospital equipment sold and delivered by the said John Keefe, as manager of the Colson-Cleveland Company, to said Board of County Commissioners for use in a tuberculosis hospital then and there under construction in said County under the supervision and control of said Board, said matter then and there being in the legislative power and authority of the said Board of County Commissioners, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

"(Signed)   Ray T. Miller, Prosecuting Attorney."

As already stated there are two errors urged why this judgment is wrong; the first being the most important, and if the court was wrong on that, it will not be necessary to discuss the other. From this record we learn that Stark county was erecting a county building known as the Molly Stark Tuberculosis Hospital, which building was to cost more than $25,000, and so it was necessary, under the laws of Ohio, that a building commission for the erection of the said building be appointed; that is, in addition to the three county commissioners of the county, it became the duty of the common pleas court of Stark county to appoint four citizens of Stark county to aid in planning the erection, the construction, and the furnishing of equipment for this building;

and those appointed by the common pleas court, together with the county commissioners, constituted the Molly Stark Tuberculosis Hospital Building Commission.

Now it is important to bear this in mind because the error complained of in this connection is that whatever bribe, if any, was solicited by Fromm, was solicited as a member of the *building commission,* and that, therefore, he was not an officer within the meaning of the law, and, as the indictment charged him with being an officer, to wit; a county commissioner, and the offense that was charged to have been committed was done in his relation as a building commissioner of the Molly Stark Tuberculosis Hospital Building Commission, the indictment was wrong and he could not be convicted under it, for it will be remembered that the indictment in the instant case does not charge him with being a trustee, or an employee, or an agent, but an officer, to wit, a county commissioner. So it becomes necessary to determine the relation of Fromm to this building commission.

Now was Fromm anything else other than a county commissioner? Had this building in question cost less than $25,000, it would have been the duty of the county commissioners of the county to build it themselves, without the aid and counsel of any citizen members whatsoever. The statutes of Ohio make it the duty of the county commissioners to have charge and supervision of all the public buildings belonging to the county, in such county, and to erect, furnish, and maintain those buildings, and, as already stated, if the cost is less than $25,000,

they must erect them without the aid of any citizen members.

Now the record shows that Charles Fromm was the duly elected and qualified acting commissioner of Stark county, and was so perhaps when the building commission was created, and he became a member of that commission only by reason of the fact that he was county commissioner. It did not add anything to his duties; it did not change them in any way; it simply added four men of the county to aid the board of county commissioners in doing what otherwise would have been their duty to do alone. Those four citizens were appointed by the common pleas court of Stark county, and, if a vacancy had occurred by death or resignation of any of those four members thus appointed, it would have been the duty of the common pleas court to fill the vacancy. If, however, there had been a vacancy in the board of county commissioners, that is, if any one of the commissioners had resigned, or had died, the vacancy as county commissioner would have been filled in an entirely different way. That vacancy would have been filled by the probate judge, the auditor, and the recorder, Section 2397, General Code, and the one selected would have filled the unexpired term of the county commissioner whose place he succeeded to, or, perhaps, until his successor might be elected and qualified; and if the county commissioner's time expired, and he was not reelected by the electors of the county to succeed himself, but some other person was elected in his stead, upon the expiration of his term his position on the building commission would be *ipso facto* vacated, and his successor without any further act on the part

of anybody would succeed to his place as a member of the building commission.

So, whatever Fromm did or had to do with the building of the Molly Stark Tuberculosis Hospital in Stark county was done as a county officer, as a county commissioner. He had no other relation to it, in any way, shape or manner. His duties were not enhanced or changed in the least by the appointment of four citizens to aid the county commissioners. It is true that the statute does provide for the keeping of the records of the building commission, but they are kept on the books of the county commissioners. It is true that the citizen members of the commission, being four in number, could outvote and take building control practically out of the hands of the commissioners if they stood together as a unit; and this, even though they were opposed by the three county commissioners. But that does not change the relation of each county commissioner to the building of a public building in the county, when such building is being erected by the county and paid for by the county. Whatever any one of the county commissioners did with respect to that building could only be done in one way, and could grow out of only one relation, and that was the relation of county commissioner—growing out of his having been elected to that office by the electors of the county. It was his duty, by statute, before there ever was such a body as a building commission created, to erect, superintend, and construct public buildings. It is just as much his duty, being a county commissioner, to do that in connection with the four members connected with the Commission as it was when the three county commissioners acted

alone. So whatever Fromm did with respect to this building, whatever control he had over the distribution of the funds, or the passing and recognition of the bills of the contractor for the building or its equipment, was done as county commissioner, and in no other way. Fromm, except as a county commissioner, was an entire stranger to this transaction, and, if the record in this case shows that Fromm did solicit a bribe from this man Keefe, and we think that it does so show beyond any question, it was in connection with a contract relating to this building over which he, as a county commissioner, had at least partial supervision.

We do not put much confidence in the argument, though made ever so skillfully, that Fromm's act was the act of a building commissioner and not the act of a county commissioner, for, as already pointed out, there was no relation of Fromm to this contract other than that as county commissioner, so, if he solicited a bribe, he solicited that bribe as a county commissioner, and we think the evidence in this case conforms to the indictment.

Now much is said in this case as to whether or not Fromm knew that he was soliciting a bribe. Well, we hardly conceive it possible that Stark county would elect to the important office of county commissioner a man with such a simple mind that he could not understand and appreciate what his act in demanding money of Keefe would mean. If he did not know that he was soliciting a bribe, he would hardly know enough to go in when it rained, and Stark county would be very much to be commiserated with in having elected and re-elected to such an important office a man of such a simple mind that

he would not know what his acts would mean in demanding money of a contractor, or the agent of a contractor, before the contractor's bills would be paid, or in threatening to hold them up in case he did not get the money that he claimed had been promised him. It is ridiculous to think that a man of his mature years and experience did not know the effect of demanding money under such circumstances as this money was demanded or solicited.

We think that the record in this case shows that Fromm, as county commissioner, solicited a bribe knowing that it was a bribe to induce him to perform his official duties, and his whole relation to this transaction was that of county commissioner and nothing else. Therefore, we think that there is nothing in the first claim of error in the argument before this court.

The next error complained of is the misconduct of the prosecuting attorney in certain arguments made to the jury. In this case a rather singular situation arose. Mr. Harter was prosecuting attorney of Stark county, and I believe Fromm was likewise indicted in Stark county for another similar offense, and it seems that a little political enmity exists between Fromm and Harter; that is, Harter belongs to one political faction of Stark county and Fromm belongs to another, and not the best of feeling exists between these two men. Well, now, Mr. Harter came to Cleveland, and he, together with Mr. Miller, the prosecuting attorney of Cuyahoga county, tried the case of State of Ohio v. Fromm, and during the course of the argument, perhaps both by Harter and Miller, certain suggestions were made. This seems

to have aroused the ire, or the objections, of counsel for Fromm, and they are able and capable counsel— Mr. Abt of Canton, Mr. Connell of Cleveland, and Mr. Drukenbrod.

Now during the course of the examination of Fromm, for he was placed on the witness stand by his counsel and was permitted, and properly permitted, to testify as to his various occupations and standing in the community—that he had been elected and re-elected county commissioner, and, I believe, had held some other elective offices in Stark county, or in the city of Canton, all of which was tending to prove that Fromm was a man of probity, character, and standing in his community; and so, when Mr. Miller was making his argument, he asked why they did not put men on to prove the reputation of Fromm, if he was a man of such high character and standing, which was objected to and exception taken. And it is claimed that the error was grievous, and that the evil effect had its influence on the jury.

It is needless to say, of course, that when a man pleads not guilty to an indictment the presumption is that he is a man of good character, and neither his character nor reputation can be brought in question by the state unless the defendant first undertakes to show that he is a man of good character. It is admitted that, if Fromm had introduced various citizens of Canton, and of Stark county, or elsewhere, to show that he had a good reputation, which evidence would have been competent, it would have been perfectly proper for the state to have rebutted this by introducing evidence to the effect that he had a bad reputation, if such were the fact. Now, of

course, in a way, Fromm did make his reputation and character an issue, not in the way that would open up the door for rebutting proof to show that he had a bad reputation, but was it not in such a way that in argument, and within the province of legitimate argument, it was proper to say, "Well, now, here is this man that tells about his election to this office and by what majority he got there. If he had such a good character, why did he not bring persons in to sustain such a character!" That is nothing more than a legitimate argument that might be drawn from the course of questions that were put to Fromm as to his standing in the community. What the answer would have been no one knows. Is it not equivalent to the prosecuting attorney commenting on the fact that a man does not take the witness stand in his own behalf? There was a time in Ohio when it would have been error, where the accused did not take the stand, if the prosecutor had commented on that fact, and I myself have charged the jury many times before the law went into effect permitting such inquiries, and have stopped lawyers from argument in such cases—I say I have been called upon many times to charge the jury in that respect and to say to the jury that a man was presumed to have a good reputation, and was presumed to be innocent, and that no inference could be drawn from the fact that he did not take the witness stand, for he was not compelled so to do, and that the jury should not draw inferences from the fact that he did not do so. But the Legislature saw fit to change that rule and to provide that a prosecuting attorney might comment on the fact, as a legitimate argu-

ment, as to why this man, if he was so innocent, did not get on the witness stand and tell the jury so.

Now were the arguments of Mr. Harter and Mr. Miller in this respect any more onerous, any more hard to meet than that sort of argument would be, for it must be remembered that they did not seek to attack Mr. Fromm's character, nor his reputation? They simply said that, if all these things about Mr. Fromm were true, why did he not bring witnesses to substantiate that his reputation was so high?

Now it seems to the writer of this opinion that that was an argument perhaps going near the line, but it cannot be said to be so prejudicial that the court would be warranted in disturbing the verdict, otherwise correct. When a man is elected to a public office he owes the duty to the public not to betray the trust, and one of the most despicable crimes that can be suggested is that a public officer misuses the trust that has been imposed upon him by using his office for private gain. To solicit a bribe, to accept a bribe, strikes at the very foundation of the honesty and integrity of public officers, and there can scarcely be a more grievous crime committed than that a public officer should so far forget himself as to solicit or take a bribe; that he is not content with his salary, but uses his office for the purpose of private gain; for he must always remember that, if those dealing with public officers have to submit to paying bribe money in order to collect their money, or to get a contract, in the long run such misused funds will come out of the public, who are the sufferers. And so the laws against bribery of public officers, or against public officers soliciting a bribe,

must be effective, so that when a man is proven guilty he shall be punished, and to say that a man who has reached the position of such trust and confidence among his fellow citizens does not understand what the soliciting of a bribe means is giving very little credit to the intelligence of a man elected to such a high office.

We think this record shows that the jury was justified in finding the defendant guilty of the crime charged in the indictment. We think the record shows that he was a public officer, to wit, one of the county commissioners of Stark county; that he held no other office and no other relation than that of county commissioner to the Molly Stark Tuberculosis Hospital Commission, in the erection of the public building in question, or the payment of funds for that building. We think that the remarks made by counsel for the state were used in argument, and, while it is well not to transcend the legitimate use of argument, still, in our opinion, it was a legitimate argument in the instant case, and whatever error there was in it, if there was any, was not of such a character as would warrant a reversal of the case. No error is urged to the charge of the court. The case seems to have been submitted to the jury carefully and ably, and the jury, having all the facts before them, found the plaintiff in error guilty, and we cannot say that there is any error in the record that would warrant us in disturbing the judgment rendered on the verdict.

The judgment will therefore be affirmed.

*Judgment affirmed.*

SULLIVAN and LEVINE, JJ., concur.