STATE, PLAINTIFF-APPELLEE, *v.* PIGOTT, DEFENDANT-APPELLANT.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26524. Decided April 23, 1964.

*Mr. John T. Corrigan,* prosecuting attorney, *Mr. John T. Patton* and *Mr. Charles R. Laurie,* assistant prosecuting attorneys, for plaintiff-appellee.

*Mr. Richard H. Miller, Mr. Gerald S. Gold* and *Mrs. Carol G. Emerling,* for defendant-appellant.

ARTL, J. This is an appeal on questions of law from a judgment and sentence imposed by the Court of Common Pleas of Cuyahoga County upon a verdict of guilty by a jury.

Harold L. Pigott, the appellant, was indicted on two counts of murder in the first degree: (1) that he purposely and of deliberate and premeditated malice killed one Linda McGee, and (2) that he purposely, while attempting to perpetrate rape, killed the said Linda McGee. Upon a plea of not guilty, the case was tried to a jury, which returned its verdict finding ap-

pellant guilty as charged in both counts of the indictment and recommended mercy as to both counts. He was sentenced to the Ohio State Penitentiary pursuant to the statute.

Before we discuss and analyze the five assignments of error, we feel constrained to note that the record in this case discloses that the evidence consists of (1) proof of the corpus delicti, (2) proof of similar acts, and (3) oral and written statements in the nature of confessions of the appellant. There is nothing in the evidence in the nature of direct proof to connect the appellant with the actual killing of Linda McGee except what was told the police orally and in writing by the accused.

The killing of Linda McGee occurred on September 29, 1961. The accused came into the custody of the police as the result of an assault by the accused upon another woman on September 15, 1962. As the result of the investigation of the latter assault, appellant was arrested on September 22, 1962. Following a statement obtained by the police from the appellant wherein he admitted the assault of September 15, 1962, the appellant was confronted with an accusation implicating him with the Linda McGee case of approximately a year before, and he admitted that assault as well. At about the same time the accused admitted still another assault that occurred on or about October 25, 1961, slightly less than a month after the McGee killing.

Because of this background, it is to be expected that the state would make use of evidence of similar acts pursuant to Section 2945.59, Revised Code. This court is fully aware that this type of evidence can be highly prejudicial unless its introduction and reception is meticulously handled by the trial court. Furthermore, unless the rights of the defendant are properly safeguarded, the door is opened to a conviction of an accused by evidence which was not designed for that purpose and a denial to the accused of the fair trial he is entitled to. It is with these thoughts in mind that we have studied the record in this case as we approached the assignments of error.

The first two assignments of error read:

"1. The view by the jury of the premises of like and similar acts of the defendant was in violation of Section 2945.16, Revised Code.

"2. The view by the jury of the premises of like and similar acts of the defendant was intended to unduly inflame the minds of the jury and was grossly prejudicial to the defendant."

Since both assignments relate to the jury view allowed by the court, they shall be considered together. Defendant raises no question as to a jury view of the premises where the murder of Linda McGee occurred. He did strenuously object to the act of the court in authorizing a jury view of the sites of the similar acts contemplated as evidence in the case. At one point in his argument against the view, he argued that the statute limits the view to the specific crime on trial.

The pertinent part of Section 2945.16, Revised Code, reads as follows:

"When it is proper for the jurors to have a view of the place at which a material fact occurred, the trial court may order them to be conducted in a body * * * to such place * * *."

In view of the many holdings by the reviewing courts, it will be readily conceded that except in those cases in which a jury view is prescribed by other statutes as mandatory, Section 2945.16, Revised Code, vests in the court judicial discretion to allow a jury view when the court deems it proper. The object of the jury view as indicated by this statute is to have a view of the place at which a material fact occurred. The case on trial may be one in which any number of material facts occurred in a variety of places. Clearly, it would not be violative of the statute, under such circumstances, that all such places be viewed by the jury. The statute does not contain the language, "where the crime occurred," nor is it limited to that construction.

The problem that here confronts us is that the trial court permitted the jury to view the sites of two incidents alleged by the state to be material as similar act evidence. The jury views were permitted before any evidence of any kind had been received. It is this action by the court that is strenuously opposed by the appellant, as is reflected in the first two assignments of error.

Section 2945.16, Revised Code, the view of the premises statute, does not by its provisions make any reference to evidence that may be offered under the so-called "similar act" statute, Section 2945.59, Revised Code.

The courts of Ohio have never considered the specific question of whether or not a trial court, during the trial of an accused, has the discretion, over objection by the accused, to allow a view of places where similar acts were alleged to have occurred. It also seems that the courts of other jurisdictions have never dealt with this specific question.

Section 2945.59, Revised Code, reads as follows:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

This statute, enacted in the Code of Criminal Procedure of Ohio in 1929, is merely expressive of the common law. It is a rule of evidence and not a rule of substantive law. *Clyne* v. *State*, 123 Ohio St., 234, 174 N. E., 767.

Note that the statute says, "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show" such motive or intent may be introduced to prove the crime charged in the indictment. These acts are material facts to be developed by the evidence adduced on the trial. It seems to follow logically that when the court has discretion to deem it proper for the jury to have a view of a place where some material fact occurred, it would have the discretion to permit a view of a place or places where other acts occurred which are offered into evidence as proof of motive, intent, or absence of mistake or accident, provided, of course, that the court takes the proper safeguards to protect the rights of the defendant.

The discretion that is vested in the court of necessity imports the exercise of sound judicial discretion. That is particularly important and applicable in a case such as this. The exercise of sound judicial discretion must be based upon a

foundation that the court is fully informed of the nature of the evidence to be offered before it determines the question of permitting the view. In the case before us, the evidence went in and was clearly admissible.

While we have earlier said that other jurisdictions have never dealt with this specific question, there are some which have dealt with the general question of whether or not it is proper to allow a jury view of premises other than the place where the alleged crime was committed although not specifically relating to "similar act" statutes.

In *Commonwealth* v. *Gedzium*, 259 Mass., 453, 156 N. E., 890, the court held, inter alia, that the ordering by the judge presiding at the trial of a murder alleged to have been committed in Cambridge, a view by the jury which included not only the scene of the alleged murder in Cambridge but also places in another county thought to be relevant to the charge against the defendant, is within the discretionary power of the judge. The case does not disclose what was alleged to have transpired at the other "places" referred to.

Also, in *Commonwealth* v. *Chance*, 174 Mass., 245, 54 N. E., 551, the court held that the trial court did not abuse its discretion when it refused to allow the jury to view both the place where the murder was committed and the route along which one of the two defendants was alleged to have fled. The statute providing for such views stated that the trial court "may order a view," and the court said that the word "may" implies discretion.

The appellant in the case of *People* v. *Crossan*, 87 Cal. App., 5, 261 P., 531, complained that the trial court erred when it, over his objection, ordered a view by the jury of the place where two girls were killed and certain other places in that vicinity.

The appellant was charged with involuntary manslaughter from operation of an airplane. The appellant was operating his plane when its engine stopped, making it necessary for him to land. He came down in the surf and as he landed the plane struck and killed two young girls who were bathing. Much of the prosecution's case was made up of evidence showing acts of negligent and reckless flying by the appellant on other occa-

sions previous to the fatal flight for the avowed purpose of showing habit of carelessness on the part of appellant, thus rebutting his claim that he had used due caution on the occasion in question. That evidence showed that the appellant had flown along the beach at low altitude barely clearing the numerous piers in that locality, that two months before the homicide he had fallen on the beach in the same vicinity, that he made a practice of flying over the boulevard at a height below the tops of the lamp posts, that he often flew down near the roofs of houses, etc.

Although the appellate court reversed the trial court for allowing the introduction of the above facts into evidence, it held that the trial court did not err in allowing the jury to view not only the place of the killing but also several other places in that vicinity on the grounds that as far as it could determine all of the places shown were places at which facts mentioned in the testimony occurred and all were within the provisions of Section 1119 of the Penal Code which extends to any place in which ''any material fact occurred,'' that the matter of a view of the premises is in the discretion of the trial court, and that its action will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion.

This latter case clearly supports the proposition that a jury view of places where a material fact occurred does not impose the strict limitation contended for by the appellant. Noteworthy is the fact that the evidence with respect to occurrences at other places was clearly inadmissible; the court nevertheless did not regard the jury view of such other places as prejudicial. When it is considered that the trial court in permitting a jury view of certain places instructs the jury that the purpose thereof is not to gather evidence but only that the jury will be better able to understand and apply the evidence that is to be offered upon the trial in the court room, that no reference whatever is permitted during the jury view as to the nature or character of the evidence involved at the place, or that material facts or acts are related to the place being shown the jury, we conclude and therefore hold that the court did not commit error in allowing the jury view involved. Assignments of error one and two are overruled.

Since we are dealing with the subject of similar acts, it behooves us to examine the record to determine whether or not the trial court did all that it should with respect to the introduction of the evidence as it relates to similar acts to provide all of the safeguards to which the defendant was entitled.

Although the assignments of error filed make no formal complaint of any error with respect to this aspect of the trial court's actions, we, of course, are empowered to consider and decide errors which are not assigned or specified. Section 2505.21, Revised Code. The record discloses that the court permitted the jury to view the site where the crime charged was alleged to have occurred and two sites where similar acts were involved, but, as already noted, there was no reference made by anyone to the similar act statute.

When the state was about to present its first witness as to similar acts, the court was so advised, and the court instructed the jury on its limited purpose. In the course of its instruction the court stated:

"Ladies and gentlemen, at this time we will hear evidence of like and similar acts. Now, this is evidence that the defendant may have committed other crimes and this evidence has a very limited purpose. * * *."

The first witness completed her testimony of an assault made upon her by the defendant. There followed the testimony of two other witnesses called by the state, both relating to the assault described by the victim of the assault. The court did not admonish the jury that their testimony was received under the similar act statute, nor did the court state the purpose of this testimony. There was no request by defense counsel that the court do so.

The state next produced a witness who was to testify as to another assault under the similar act statute and again the state advised the court thereof. The court charged the jury at the time as follows:

"THE COURT: Ladies and gentlemen of the jury, again I want to indicate to you that we are now hearing evidence not on the crime charged in the indictment, but similar acts under Section 2945.59, Revised Code.

"There is evidence that this defendant may have committed

other crimes. This evidence, as in the previous alleged crime, has a very limited purpose. * * *.''

There are many cases holding that when receiving evidence under the similar act statute, Section 2945.59, Revised Code, it is the duty of the trial court in each instance to instruct the jury at the time of the reception of such evidence that it is received under the similar act statute and to instruct on the limited purpose for which such evidence is received. A proper instruction in this connection should include a definite admonition ''that such evidence is not to be considered as substantive evidence or proof of the crime charged.''

It appears from the record that the court did not properly instruct the jury at the time of the reception of the testimony of the second and third witnesses to the first assault. Nor did the instruction given at the time to the first witness contain the admonition indicated. However, defense counsel made no request to the court to instruct the jury with respect to the testimony of the two witnesses as above noted, nor as to the admonition set forth.

Many Ohio cases have held that a failure to limit purpose for which evidence of similar acts is received at the time of its receipt is not error when there was no request by counsel to do so. See: *State* v. *Hollos*, 76 Ohio App., 521, 65 N. E. (2d), 144; *State* v. *Bernstein*, 25 Ohio Law Abs., 291 (Appeal dismissed 133 Ohio St., 74); *Hitchcock* v. *State*, 47 Ohio App., 90, 190 N. E., 773; *State* v. *Oldham*, 53 Ohio Law Abs., 279, 34 N. E. (2d), 773.

In *State* v. *Pope*, 171 Ohio St., 438, 172 N. E. (2d), 9, the first paragraph of the syllabus reads as follows:

''1. Failure of the trial court in a criminal case to instruct the jury as to the purpose of testimony as to similar offenses charged to the accused and the manner in which it is to be considered, at the time such testimony is admitted, is not reversible error, where no request for such instruction is made and the court covers the matter adequately and correctly in the general charge.''

This was the holding in the case of *Patterson* v. *State*, 96 Ohio St., 90, 117 N. E., 169. See also: *State* v. *Glaros*, 170

Ohio St., 471, 166 N. E. (2d), 379, wherein the first paragraph of the syllabus reads:

"It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."

In the instant case the trial court's general charge adequately covered the situation.

One aspect of the trial court's instruction with respect to similar acts evidence is the comment made by the court in characterizing the type of evidence as above set forth, which reads, "Now, this is evidence that the defendant *may have committed other crimes.*" (Emphasis added.)

Again, in the same connection, he stated, "There is evidence that this defendant *may have committed other crimes* " (Emphasis added.)

It is our conclusion, and we therefore hold, that the use of such characterization of similar act evidence is error but, the defendant having taken the stand and having admitted the assaults involved, it is our view that such error has been cured.

The third assignment of error is stated as follows:

"The refusal of the trial court, during the voir dire examination on the admissibility of defendant's statements, to permit defendant's counsel to see these statements constituted a denial of due process and violated defendant's rights under Amendment XIV of the United States Constitution."

It developed that after the state had produced evidence that definitely established the corpus delicti the state called as a witness a police detective involved in the investigation and it became apparent that his testimony would involve not only oral statements made by the defendant-accused but written statements as well.

The record clearly discloses that counsel for the defendant were concerned whether the statements made by defendant were voluntarily or involuntarily made. An examination of the record discloses that prior to the commencement of the trial defense counsel moved the court to order the prosecuting attorney to allow defendant to inspect and copy any and all written ex-

hibits which the prosecution expected to introduce into evidence in the trial of this case. Following arguments of counsel, the court overruled the motion.

During the testimony of Detective Birt, who preliminarily testified as to his contact with the case and identified the defendant, and before any testimony as to oral or written statements began, the record discloses the following, outside the hearing of the jury:

"MR. GOLD: Your Honor, at this time I would like to move the Court grant the defense an opportunity to conduct a voir dire examination into the voluntary character of any statements, either oral or written—oral statements in this case could amount to confession or admission, I don't know which —but if it is involuntary it is, of course, highly inadmissible; and I think prior to having the testimony go before the jury, the Court should make the determination as to the voluntary character of the statement."

The court authorized the voir dire proceedings, excused the jury; after which we find in the record a statement by defense counsel to the effect that he was conducting a voir dire into the voluntary character of any oral or written statements made by the defendant all at one time.

Again, at the conclusion of the testimony of Detective Birt as the result of the voir dire, the record discloses that the defense, in calling the next witness, Sergeant O'Malley, said: "on the record we want to make it clear that we are calling Sergeant O'Malley strictly for the purposes of this voir dire as to the voluntariness or involuntariness of this confession, and for no other purpose." After the testimony of the officer was concluded, defense counsel indicated that they had no further evidence to offer, at which time the court held that the confession was voluntary, and supplemented said ruling with the statement that "this defendant has failed to prove that the confession was involuntary."

The appellant complains that in order to determine the admissibility of the statements containing the confession the voir dire was conducted, during which he repeatedly requested permission to inspect the statement, which was denied by the court, and that this procedure constitutes a denial of due pro-

cess to the appellant. He contends further that under Section 2945.41, Revised Code, to the effect that, "The rules of evidence in civil causes, where applicable, govern in all criminal causes," he should have been permitted to inspect and copy the statements.

From an examination of the record, we cannot escape the conclusion that the voir dire examination was not concerned with the contents of the confession or statements made by the defendant. It is clear that the defendant was endeavoring to establish circumstances that would tend to establish that the admissions and confession were involuntary.

In view of the holdings of our reviewing courts as expressed in *State* v. *Yeoman*, 112 Ohio St., 214, 147 N. E., 3, *State* v. *Rhoads*, 81 Ohio St., 397, 91 N. E., 186, *State* v. *Sharp*, 162 Ohio St., 173, 122 N. E. (2d), 684, *State* v. *Williams*, 85 Ohio App., 236, 88 N. E. (2d), 420, *State* v. *Hahn*, 25 Ohio Law Abs., 449, *State* v. *Johnson*, 57 Ohio Law Abs., 524, 94 N. E. (2d), 791, *State* v. *Strong*, 119 Ohio App., 31, this court will overrule without further comment an assignment of error predicated upon the trial court's refusal to order statements of the defendant to be given to defense counsel for examination and inspection before trial.

The defense refers us to the case of *State* v. *Cala*, reported in 31 Ohio Law Abs., 97, 35 N. E. (2d), 758, decided by this court. That case is authority for the proposition that Section 2317.33, Revised Code, dealing with the inspection and copy of books and documents is purely discretionary with the trial court. In the case at bar there was no order by the court and it is apparent from the record that the objection to the admissibility of the confession was not predicated upon the failure of the court to permit such examination. See opinion, page 760, under Paragraph 8, *State* v. *Cala, supra.*

The fourth assignment of error is stated as follows:

"4. The delay for almost a whole day and overnight in striking the police officer's inadmissible testimony on defendant's record was grossly prejudicial to defendant, and the defense motion for a new trial (sic) should have been granted at that time."

The complaint arises as to a result of the testimony **of**

Sergeant O'Malley, one of the investigating officers, who was testifying as to conversations he had with the defendant on direct examination. The officer was permitted to testify that in his conversations with defendant, defendant admitted to him, in response to the officer's question as to whether or not defendant had a previous record for sex crimes, that he did have such record; again, that defendant was imprisoned for two years in West Virginia for the crime of attempted rape in 1942, and for a conviction in 1947 for contributing to the delinquency of minors. This testimony resulted from three separate attempts by the prosecutor to get this conversation before the jury, and it was permitted over the objection of the defense; the first time the court overruled the objection; the second attempt without a ruling on the objection, the court asked that the question be repeated; and after the third statement by the officer, and a conference between counsel and the court out of the hearing of the jury, the court recessed until the following morning.

On the following morning, argument on the objection to this testimony was resumed. During the argument the following took place:

"MR. GOLD: May it please the Court, first I would like the record to show that the objections were made at approximately 3:30 to 3:45 yesterday. We are now arguing the question at approximately 9:45 to 10:00 o'clock the following day. I say that because I feel that the testimony that has gone to the jury is so prejudicial that it can not be cured by any admonishment of the Court, and the only method of preventing great prejudicial harm in befalling this Defendant in a trial for his life is to declare a mistrial at this time."

Following argument of counsel, the court ruled the testimony inadmissible, stricken from the record, overruled the motion for a mistrial and instructed the jury that such testimony was stricken from the record and that "you are to disabuse your minds of that answer and totally disregard that answer for any reason whatsoever in this trial." Up to this time the defendant had not testified and had not put his character in issue. It is a rule of law that neither the accused's character nor reputation can be brought into question by the state unless accused first undertakes to show that he is a man

of good character. *Fromm* v. *State*, 36 Ohio App., 346, 173 N. E., 201; *State* v. *Markowitz*, 138 Ohio St., 106, 33 N. E. (2d), 1; *Sabo* v. *State*, 119 Ohio St., 231, 163 N. E., 28.

We conclude, therefore, and hold, that it was error for the court to allow the introduction of this testimony, and to permit the jury to cogitate upon it overnight. The court did its duty to strike it from the record and to instruct the jury to disregard the answer given by the witness. There still remains the question as to whether or not this instruction alone cures the prejudicial nature of this testimony under the circumstances. It is our view that since the defendant testified in his own behalf and admitted the conviction and record of the earlier sex crimes, whatever error was committed has been cured. *Andrews* v. *City of Cincinnati*, 25 O. L. Rep., 456; *State* v. *Ellis*, 36 Ohio Law Abs., 471, 44 N. E. (2d), 800; *Commonwealth* v. *Davis*, 363 Pa., 91, 69 A. (2d), 123; *McKenzie* v. *State*, 33 Ala. App., 7, 33 So. (2d), 484; *Lewis* v. *Commonwealth*, 308 Ky., 161, 213 S. W. (2d), 1009.

The fifth and final assignment of error is:

"The verdict of the jury is manifestly against the weight of the evidence."

In his summary of argument, appellant urges that this fifth assignment of error would warrant a new trial "especially since the prosecution introduced as the murder weapon a knife that could not have inflicted that particular wound" and argued further that "It was a deliberate deception on the part of the State to introduce the wrong weapon and then imply that it had been used in the crime."

Charges such as this certainly require a close examination of the record and, needless to say, we have done just that. The defense for its position relies upon the testimony of the County Deputy Coroner, an eminent pathologist. The doctor, having been shown the knife introduced and received in evidence properly, State's Exhibit 28, was asked about the probability that this knife caused the wound from which Linda McGee died; he answered, "I would say it was quite improbable. The depth of the wound is considerably greater than the length of that knife."

The testimony of the doctor on this question on redirect

examination is not only material but quite illuminating. It is as follows:

"Q. Now, when you made your examination of the body of Mrs. McGee, what portion of the body again did you find this wound?

"A. In the back of the left chest.

"Q. And this is on a fleshy part of the body? That is, in comparison to the part which you referred to, there is no bone in that particular section the knife went through?

"A. No, the knife went between the ribs, that's correct.

"Q. Now, doctor, assuming that this very knife was used in this case, and in the stabbing portion of the—rather, in the actual stabbing of the victim with this knife in the spot where you found it, is it reasonable or consistent with the position that if it were struck with some power that it would go in deeper than the actual length of this knife?

"A. Certainly the chest wall can be compressed and pushed in. But if you are saying the knife going in deeper, I assume by that you mean that the knife would go in deeper than the blade.

"Q. Not the knife, itself, but the wound will be deeper than the actual blade distance because of the compression of part of the body that can be had with some force behind the knife?

"A. Yes, one can certainly compress the chest. It is flexible."

In a further analysis of this extremely serious charge levelled at the prosecution, the presentation of evidence regarding the knife in this case is not only of extreme importance but determinative of the question involved.

When defendant was first arrested in connection with the first similar act assault, he denied that he assaulted the victim with a knife. It developed as the result of the police investigation that he did use a knife in that assault and advised the police that it was in the locker at his place of employment. Defendant arranged with his wife to give the officers the key to his locker where they found the knife in question. Being shown the knife in connection with the said assault statement, the defendant admitted it was his, that he had had it about

two years, that his wife had purchased it for him. It was the only knife he had.

In his statement to the police with respect to the Linda McGee killing (State's Exhibit 16a), he was asked these questions:

"Q. Showing you a Kamp King pocket knife, black handle, with can opener and screw driver and bottle opener in same, with one large blade, and punch, what can you tell us about this knife?

"A. That is my knife that I had the night I stabbed the woman.

"Q. What blade did you have open?

"A. The big blade."

With this testimony in the record, should there be levelled at the prosecution any charge that there was deliberate deception under the circumstances? It comes with poor grace that anything such as this would be urged or even suggested.

It is our judgment and conclusion that it was for the jury to determine the question of the murder weapon. The groundwork for the introduction of the particular knife was properly laid and we believe sufficiently explained by the coroner in the light of the defendant's testimony as to the manner of attack and the actual stabbing. This assignment of error is not well taken and is overruled.

Although the court's charge has not been assigned as error, we note upon an examination thereof that the court in his charge dealing with the task of the jury with respect to whether or not it will recommend mercy suggests to the jury that it is its function to determine whether mercy or clemency should be extended. It must be borne in mind that it is never the function of the jury to determine whether clemency shall be extended. Clemency by statute is a well-defined province developed in our criminal procedure and whether or not clemency is to be extended in a criminal case is reserved to the officials designated by statute. Though we find in the instant case that the inclusion thereof herein was error, in view of the jury's recommendation of mercy, we cannot say that it was prejudicial.

It is the claim of appellant that the proceedings herein were replete with incidents of a prejudicial nature, all of which

have been laid at the doorstep of the prosecution and the court. We have been diligent in our task to examine and evaluate each claim made by the appellant and have included others that were not assigned or specified. Errors were committed but in each instance we are satisfied that the effect of such error was cured, as has been above demonstrated. We conclude, therefore, and hold that the defendant has been accorded a fair trial.

Judgment affirmed.

Exceptions. Order see journal.

SILBERT, P. J., CORRIGAN, J., concur.