THE STATE OF OHIO, APPELLEE, *v.* CRAFTON, APPELLANT.

(No. 413—Decided July 31, 1968.)

*Mr. Thomas L. Tribbie,* prosecuting attorney, for appellee.

*Messrs. Sheppard & Agnew* and *Mr. Neal S. Tostenson,* for appellant.

McLAUGHLIN, J. This appeal on questions of law is from a conviction and sentence for child-stealing under Section 2901.33, Revised Code.

The indictment in two counts charged, in substance, the defendant with the child-stealing of her two children, one aged 10, the other aged 7, from Erman W. Kirkman, their father and "the person having lawful charge and custody thereof." The defendant is the natural mother of the two children named in the indicment.

The indictment grew out of a divorce decree granted in Louisville, Kentucky, in which Erman W. Kirkman, former husband of the defendant and father of the children, was awarded custody.

After the divorce, the husband moved with the children to Cambridge and established their home with his mother.

In August of 1965, the wife came to Cambridge and took the two children named in the indictment to Indiana. The husband then went to Louisville, Kentucky, where he caused the wife to be cited for contempt of court. After a hearing, the Kentucky court ordered the wife to return the children to the husband and, when she did not do so, found her to be in contempt and confined her in jail until she purged herself of such contempt by returning the children. She returned the children, and the husband brought them back to Cambridge. Subsequently, the wife visited the children in Cambridge on Christmas and New Years Day.

The wife, in August 1966, came to Cambridge and filed a petition in the Juvenile Court of Guernsey County for a change of custody. After a hearing, her petition was denied, and the Juvenile Court ordered custody to remain with the husband-father with certain rights of visitation. At the time of the Juvenile Court hearing, the wife was

married to a man named Crafton and lived in Jefferson-ville, Indiana.

On September 2, 1966, the wife came to Cambridge to visit the children. She took the two children named in the indictment and returned to Indiana with them, after which she called the father-husband and notified him that she had taken the children back to Indiana and that she was going to keep them.

The husband filed an affidavit in the Municipal Court of Cambridge, as a result of which this wife was, after being indicted, extradicted and returned to Ohio and tried for child-stealing on February 14, 1967. The jury returned a verdict of "guilty."

Assignment of error No. 1 reads:

"The trial court erred in the admission into evidence plaintiff's exhibits Nos. 1, 2 and 3."

It is contended that these three state's exhibits 1, 2 and 3 were not admissible in evidence because they were not properly authenticated. State's exhibit 1 is a certified copy of the Kentucky divorce decree and contained the award of custody of the two minor children named in the indictment to the father, the former husband of the defendant. State's exhibit 2 is a certified copy of the decree of the Kentucky court, which found the defendant in contempt and ordered her to jail until she purged herself of such contempt by returning the children to her former husband. State's exhibit 3 is a certified copy of the custody award to the father, the former husband, of the Juvenile Court of Guernsey County.

We find all three of these exhibits to be properly authenticated. Exhibits 1 and 3 were in proper form and admissible. Exhibit 2 was admissible as modified. See *ante.*

The second assignment of error reads:

"The admission of exhibit No. 2 was prejudicial to the rights of the defendant in the eyes of the jury."

We discuss this assignment of error at length, inasmuch as the case may be tried again.

In considering whether state's exhibit 2, as offered, was inadmissible in evidence as being prejudicial in the

eyes of the jury, it is necessary to examine the testimony of the father of these minor children, whom we consider to be the prosecuting witness against the defendant.

Over objection, this prosecuting witness testified as follows:

"Q. Where did you go? A. I had to go to Louisville, Kentucky.

"Mr. Tostenson: I'm going to object to this phase of the questioning.

"The Court: Overruled.

"Q. And how long after arriving in Louisville, Kentucky, did you get your children to bring them back to Cambridge? A. Approximately one week.

"Q. And was any action filed in court, at this time, in Louisville? A. Yes, sir.

"Q. And, at this time, Mr. Kirkman, did your wife appear in court in Louisville? A. Yes, sir, she did.

"Q. And was there any order made by the court, to your knowledge, in regard to these children in August of '65? A. They held her in contempt of court.

"Mr. Tostenson: I'm going to object. The court order will speak for itself.

"The Court: Beyond showing that the plaintiff and defendant were present in court at that time, the objection will be overruled.

"Q. I believe you can answer the question. Was Mrs. Crafton present in court at the time she was held in contempt? A. Yes, sir.

"Q. And were the children then returned to you, Mr. Kirkman? A. She, at first, would not return those children during the course of the week until the weekend, *which the judge in that same court had her confined to the Jefferson County jail.*

"Q. *And was she so confined at the Jefferson County Jail? A. Yes, sir.*" (Emphasis added.)

The italicized words of the prosecuting witness make reference to the Kentucky court's disposition of a prior similar offense. Such reference is prejudicial error, and the trial court should have stricken that part of the answer

and carefully instructed the jury to disregard it. Failure to do so is reversible error. Likewise that part of state's exhibit 2 which makes the same reference should have been modified and blotted out. See *State* v. *Haines* (1960), 112 Ohio App. 487.

"Q. And did she then return the children at a later time? A. Yes, sir, she did.

"(Plaintiff's exhibit No. 2 was then marked for purposes of identification.)

"Q. Mr. Kirkman, I hand you what's been marked as plaintiff's exhibit 2 and ask if you can identify this, please? A. It's a contempt order.

"Q. Is this the order that was placed on record in September of 1965? A. Yes, sir."

Such testimony and state's exhibit No. 2 is of a nature that it tends to draw away the minds of the jurors from the point at issue and to excite passion and prejudice and mislead the jurors into thinking that it can be considered as substantive evidence of the offense on trial. This leads us to the conclusion that such evidence is admissible only by virtue of Section 2945.59, Revised Code, which reads as follows:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

Generally, evidence that an accused has committed a similar act is not admissible to show commission of the the crime charged. "The real meaning of this rule is that evidence of collateral offenses must never be received as substantive evidence of the offense on trial." See *Whiteman* v. *State,* 119 Ohio St. 285, at page 290.

In *Baxter* v. *State,* 91 Ohio St. 167, the third paragraph of the syllabus reads:

"Where evidence of former offenses is properly admitted to prove intent, it is the duty of the trial court, at the time such evidence is offered, to instruct the jury the purpose for which it is admitted."

In *State* v. *Pigott,* 1 Ohio App. 2d 22, the Court of Appeals for Cuyahoga County said, at page 30:

"There are many cases holding that when receiving evidence under the similar act statute, Section 2945.59, Revised Code, it is the duty of the trial court in each instance to instruct the jury at the time of the reception of such evidence that it is received under the similar act statute and to instruct on the limited purpose for which such evidence is received. A proper instruction in this connection should include a definite admonition 'that such evidence is not to be considered as substantive evidence or proof of the crime charged.' "

We are prompted to consider, *sua sponte,* the duty of the trial court to instruct the jury upon the limited purpose for which such evidence is received.

It must be remembered that in this case the defense made no motion to strike this evidence from the consideration of the jury nor did it make any motion to have the trial court instruct the jury as to the limited purpose for which it was received.

Where no request for such instruction is made at the time such evidence is received, it has been held to be an error of omission and, therefore, nonprejudicial *if* the trial court covers the matter properly and adequately in the general charge. See *State* v. *Pope,* 171 Ohio St. 438; *State* v. *Pigott,* 1 Ohio App. 2d 22; *State* v. *Hollos,* 76 Ohio App. 521; *State* v. *Oldham,* 53 Ohio Law Abs. 279; and *State* v. *Haines,* 112 Ohio App. 487.

However, we have been unable to find any reported Ohio cases in which this error of omission in receiving such evidence was not covered by the trial court's instructions, at least in its general charge to the jury.

We are, therefore, of the opinion that when evidence

of similar acts is admitted under Section 2945.59, Revised Code, *supra*, and the court does not instruct the jury at the time of the reception of such evidence or in its general charge upon the limited purpose for which such evidence is received, failure to so instruct the jury, even though no request for such instruction is made, is an error of commission for which this cause should be remanded for further proceedings and a new trial.

Assignment of error No. 2 is, therefore, sustained.

Assignment of error No. 3 reads:

"The trial court erred in allowing Erman W. Kirkman to testify to prejudicial material that was irrelevant to the issues of this case."

The subject of this assignment of error is the following testimony by Mr. Kirkman, prosecuting witness:

"Q. Mr. Kirkman, Mr. Crafton who is presently married to your wife—did you know Mr. Crafton? A. Yes, sir, I did.

"Q. And how did you know Mr. Crafton?

"Mr. Tostenson: I'm going to object.

"The Court: Overruled at this time.

"A. I have known Mr. Crafton for a number of years. In fact, when he was just a boy. He was then my wife's stepbrother. *Mr. Crafton spent some time in a penal institution.*

"Mr. Tostenson: I'll object.

"The Court: The objection is sustained.

"Q. Did Mr. Crafton, during the time that this action for divorce was pending, live at your home at any time?

"Mr. Tostenson: I'll object.

"The Court: I'm going to overrule.

"A. Yes, sir, he did.

"Q. And when was it that he left your home?

"Mr. Tostenson: I'll object, your Honor. This is matters that took place long before the decree that they've talked about here. It is immaterial to the charge as to whether or not this defendant took these children with intent to detain them, and I think it is prejudicial to the defendant.

"The Court: I'll sustain at this time." (Emphasis added.)

This testimony is obviously irrelevant, incompetent and immaterial and, as such, was highly prejudicial to the defendant. Objection to this testimony was properly sustained, but defense counsel did not follow up this favorable ruling by curative or protective motions.

The state urges that it was incumbent upon defense counsel to ask that this testimony be stricken and the jury instructed to disregard it and, not having done so, waived the defendant's rights with respect thereto.

In our opinion this particular testimony of Mr. Kirkman was so highly prejudicial, as well as incompetent, irrelevant and immaterial, that it became incumbent upon the trial court to intervene, *sua sponte,* then and there, or at least in its general charge to instruct the jury that it must be disregarded.

The questions of the prosecuting attorney were of such a nature that the answers thereto must contain prejudicial evidence. The reference to the present husband of the defendant as having spent some time in a penal institution implies that defendant is now married to a convict. The error was such that a motion to strike or have the jury disregard, if sustained, could not cure. To have urged such motions and to have obtained a favorable ruling thereon would only have emphasized such evidence for the jury.

Assignment of error No. 3 is, therefore, sustained.

Assignment of error No. 4 reads:

"The trial court erred in overruling defendant-appellant's motion for a direct verdict at the close of the state's case."

In this connection, it is contended that a strict construction of Section 2901.33, Revised Code, would warrant the holding that one parent cannot steal their children from the other parent. In other words, that the words in the statute "or other person having the lawful charge or custody thereof" by strict construction mean a person other than either of the parents of the children. To us, the words of the statute need no interpretation or con-

168

struction, and in this case the divorced father, who has been awarded custody of the children by order of the court, qualifies as being a person having lawful charge or custody thereof.

The fourth assignment of error is overruled.

Assignment of error No. 5 reads:

"The court's charge to the jury was in error."

We find no error in the court's general charge, except the court's failure to instruct the jury as to the limited purpose for which evidence of the similar act of the defendant was received.

This assignment of error is, therefore, sustained as to that part only.

Accordingly, judgment is reversed and the cause remanded for further proceedings according to law and a new trial.

*Judgment reversed.*

RUTHERFORD and VAN NOSTRAN, JJ., concur.