OPINION
Defendant-appellant Warren Lee Roden appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of Rape, in violation of R.C. 2907.02(A)(2), a felony of the first degree. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On April 26, 1999, defendant-appellant, Warren Lee Roden, [hereinafter appellant], was indicted on one count of Rape, in violation of R.C. 2907.02(A)(2), for the March 8, 1999, sexual assault on his wife, Janie L. Roden. At the arraignment held April 30, 1999, appellant pled not guilty to the charge. The case proceeded to a jury trial on July 22, 1999. The State presented a total of four witnesses, including the victim. Appellant presented no evidence, other than the cross-examination of the prosecution's witnesses. The following facts were elicited at trial: Appellant and Janie L. Roden [hereinafter victim] had known each other for 11 years and had been married since July, 1993. Together they have three daughters, ages 11, 10 and 9 years of age. The couple had been experiencing marital difficulties and had separated in January of 1999. At the time of the incident, the victim was living with her mother and sister and daughters. The daughters stayed with their father on weekends and spent the remainder of the week with their mother, the victim. Two weeks prior to the rape, appellant visited the victim at her mother's home and spoke to the victim about her supposedly sleeping with another man known as "Doug". Appellant told the victim that he did not like it that she was sleeping with Doug. The appellant threatened that he would get the victim for this. After making that threat, appellant took the victim's van and left the premises. During the evening of March 7, 1999, appellant and the victim exchanged a number of heated telephone calls. During the last call made by appellant to the victim, appellant told the victim that their oldest daughter was sick, spitting up blood and was calling for her mother to come over. The victim agreed to come to appellant's home but had no way to get there. Appellant came to the victim's residence and picked her up. The victim immediately went to the upstairs bedroom where the three daughters stayed and found them all asleep. Because it was late, approximately 2:00 A.M. in the morning on March 8, 1999, the victim opted to sleep on the floor in her daughter's room instead of returning to her mother's home. Appellant, however, called the victim out into the hallway claiming that he wanted to talk to her about the children. Once the victim was in the hallway, appellant grabbed her arm and waist, picked her up and carried her to his bedroom. Appellant then threw the victim on the bed, pinning her there by falling on top of her. Appellant removed the victim's shorts and underwear. The victim attempted to use her arms to push appellant off of her. However, the victim was not successful. The victim told appellant that she did not want to have sex with him because she was still on her period. Appellant ignored the victim's protestation and refusal and had vaginal intercourse with the victim against the victim's will. The victim, at this point, gave up trying to unsuccessfully struggle against appellant and decided not to scream as that would awaken her daughters and she did not want her daughters to see what was happening to her. The testimony showed that once appellant was finished with her, he told the victim that she could now get out of his house and go back to Doug. Appellant also told the victim that since she would not give appellant what he wanted, he had gotten it elsewhere. Appellant further stated that he had a son on the way. After the incident, the victim locked herself in the bathroom where she cried as she put her clothes back on. The victim then went downstairs, used a cell phone to call her sister, and left the house. The victim walked to a nearby business where her sister came and picked her up. The sister testified that upon seeing the victim she realized that there was something wrong. The sister testified that the victim was crying and was distant. Eventually, the victim requested to be taken to the emergency room and told her sister that she had been raped. Once the two women arrived at the hospital, a rape kit was used to collect evidence and the police were called. Canton Police Officer Kevin Clary responded to the call and proceeded to the hospital to interview the victim. The officer found the victim lying in bed in the fetal position and distant in her responses. The victim eventually told Clary what had happened that night and became very emotional, including crying and shaking as she spoke. Officer Clary then proceeded to appellant's home to speak with appellant. Appellant admitted that the victim had been at his house that night and his story was consistent with his wife's recount of the event until he related what had happened in the hallway. Appellant stated that he was talking with his wife and that they both walked to his bedroom. Appellant then stated that they engaged in consensual sex, after which the victim went to the bathroom, dressed, and called her sister to pick her up. The victim left the residence despite the late hour, to wait for her sister. Appellant claimed that he was concerned about the victim, so he drove to find her, but left when he saw the victim's sister arrive. In his statement to the police, appellant admitted that the victim was crying during sex, but he did not know why. Appellant also admitted to Officer Clary that he never asked for the victim's consent to engage in sex, and had told the victim that after he was done she could now go back to Doug. Officer Clary testified that he had appellant tell his story a number of times and noticed that appellant changed his story each time adding little pieces of information that he had omitted in prior versions. Because of the multiple stories, Officer Clary asked appellant to come to the police department to provide a written statement, to which appellant agreed. At the conclusion of the trial, the jury found appellant guilty of the charge of rape. Thereafter, during a separate sentencing hearing, the trial court sentenced appellant to a determinate term of 3 years of incarceration. It is from this conviction and sentence that appellant raises the following issues on appeal:
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT ADMITTED EVIDENCE OF PRIOR BAD ACTS UNDER EVIDENCE RULE 404(B) AND R.C. 2945.59.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT FAILED TO INSTRUCT THE JURY ON THE PROPER APPLICATION OF PRIOR BAD ACTS EVIDENCE.
 ASSIGNMENT OF ERROR III THE JURY VERDICT FINDING DEFENDANT-APPELLANT GUILTY OF FORCIBLE RAPE OF HIS WIFE WAS NOT SUPPORTED BY THE EVIDENCE; IN THE ALTERNATIVE, THE JURY VERDICT FINDING DEFENDANT-APPELLANT GUILTY OF FORCIBLE RAPE OF HIS WIFE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
In his first assignment of error, appellant contends that the trial court erred when it overruled appellant's objections to the admission of evidence that appellant threatened or menaced the victim, Janie L. Roden, two weeks prior to the rape. Appellant contends that the threat constituted a prior bad act and the admission into evidence of the threat violated Evid.R. 404(B) and R.C. 2945.59. We disagree. The trial court is vested with discretion in determining the admissibility of evidence. Evid.R. 104. Any error in the admission of evidence must be analyzed under an abuse of discretion standard of review. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. Evid.R. 404(B) provides:
 Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.
It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The applicable statute, R.C. 2945.59, provides:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
Since the evidence rule and the statute set forth an exception to the common law with respect to other acts evidence, they are to be construed against admissibility unless the proposed evidence tends to show one of the enumerated exceptions. As the Ohio Supreme Court stated:
 Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict.
State v. Burson (1974), 38 Ohio St.2d 157, 158-159, 67 O.O.2d 174, 175, 311 N.E.2d 526, 528; State v. DeMarco (1987), 31 Ohio St.3d 191,194, 31 OBR 390, 392, 509 N.E.2d 1256, 1259. Neither the rule nor the statute contains the words "like" or "similar." The rule and statute contemplate acts which may or may not be similar to the crime at issue. If the other act does in fact "tend to show" by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible. State v. Flonnory (1972), 31 Ohio St.2d 124, 126, 60 O.O.2d 95, 96-97, 285 N.E.2d 726, 729. State v. Broom (1988),40 Ohio St.3d 277, 281-282, 533 N.E.2d 682. We find that appellant's threat to get the victim for sleeping with another man is relevant to the issue of appellant's intent and motive when he had sexual intercourse with the victim two weeks later. Appellant contended at trial that the sexual activity in question was consensual, while the victim maintained that it was forced. Evidence of appellant's threat bore directly on the issue of intent and motive and was therefore admissible under Evid.R. 404(B) and R.C. 2945.59. We find no error in its admission. Appellant further argues that even if the evidence was admissible under Evid.R. 404(B), it may still be excluded pursuant to Evid.R. 403 if its prejudicial effect outweighs its probative value. The record reflects that no objection on this basis was raised at trial. Therefore, we must review this argument under the plain error standard. State v. Lundgren (1995), 73 Ohio St.3d 474, 487, 653 N.E.2d 304. In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus, State v. D'Ambrosio (1993), 67 Ohio St.3d 185. We find that the probative value of the evidence was strong given that the appellant contended that the sex was consensual and the victim contended that the sex was forced. The trial revolved around the issue of appellant's motive and intent. Further, evidence at trial reflected that appellant and his wife were experiencing marital difficulties, some of which involved appellant's belief that his wife was sleeping with another man. These difficulties resulted in appellant's threat. The threat was probative of appellant's motives and intent. Under these circumstances, we find that the evidence was admissible even after an Evid.R. 403 analysis. Therefore, it was not plain error to admit this evidence under Evid.R. 403 because it was not error at all to admit this evidence under Evid.R. 403. Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant argues that the trial court erred when it failed to sua sponte instruct the jury on the proper application of prior bad acts evidence. We disagree. Appellant did not object to the jury instructions as given and did not request that an instruction be given regarding prior bad acts evidence. Therefore, we must analyze this issue under a plain error standard of review. In support of his argument, appellant cites this court to Baxter v. State (1914), 91 Ohio St. 167 and State v. Crafton (1968), 15 Ohio App.2d 160, paragraph two of the syllabus. However, the Ohio Supreme Court has expressly rejected appellant's argument. In State v. Schaim (1992), 65 Ohio St.3d 51,61-62, fn. 9, 699 N.E.2d 661 [600 N.E.2d 661, the court held:
 The defendant also claims that it was plain error for the trial court to fail to give a limiting instruction on the use of other acts evidence, even though it was not requested by the attorney.
We decline to adopt this position, as the decision not to request a limiting instruction is sometimes a tactical one, and we do not wish to impose a duty on the trial courts to read this instruction when it is not requested. In State v. Johnson (Aug. 3, 1998), Stark App. No. 1997-CA-00247, unreported, 1998 WL 517852, this court followed Schaim and rejected appellant's argument that a trial court is under a duty to provide sua sponte an Evid.R. 404(B)'s prior bad acts limiting instruction. Appellant's threat was offered for the permissible purpose to show appellant's motive and intent in rebuttal to appellant's contention that the sexual intercourse was consensual. Further, as noted by the Ohio Supreme Court, the decision not to request a limiting instruction, on the use of other acts evidence, may be a trial strategy. We agree with the Supreme Court and do not wish to impose a duty on the trial court to include such an instruction when it is not requested. See State v. Schaim, supra. Therefore, we find that the trial court did not commit plain error in failing to provide a sua sponte limiting instruction to the jury on the proper use of Evid.R. 404(B) "other acts" evidence. Assignment of error II is overruled.
 III
Appellant, in his final assignment of error, asserts that the conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. In State v. Jenks (1981),61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541
(citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717). Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, syllabus 1. In this case, appellant was convicted of rape. In order to convict a defendant of rape, the State must show that the defendant engaged "in sexual conduct with another when the offender purposely compel[led] the other person to submit by force or threat of force." R.C. 2907.02(A)(2). R.C.2901.01 defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person." The Ohio Supreme Court has held that a defendant purposely compels another adult to submit to sexual conduct by force or threat of force if the defendant creates the belief that physical force will be used if the victim does not submit. State v. Schaim (1992),65 Ohio St.3d 51, paragraph one of syllabus. At trial, testimony showed that after repeated heated telephone calls from appellant to the victim, appellant lured the victim to his home by telling the victim that her daughter, who was spending the weekend with appellant, was very ill and spitting up blood. Due to her daughter's purported illness, the victim agreed to come to appellant's home. Upon arriving at appellant's home, the victim found her daughter asleep in her room. At that point, appellant asked the victim to step out of her daughter's room and speak with him. The victim testified that once in the hallway, appellant grabbed her around the waist, carried her into the bedroom, threw her on the bed, removed her shorts and panties and forced her to have intercourse. The victim testified that she told appellant "no" and attempted to push him off of her with her arms, thus appellant could not get him off of her nor get away from him. Although appellant did not testify, a written statement that appellant gave to the police was read to the jury. Appellant's written statement to the police indicated that he grabbed appellant by the arm and took her to the bedroom. In the bedroom, he grabbed her by her waistline and put her on the bed. Appellant acknowledged that he removed the victim's shorts and panties. The police officer that interviewed both the victim and appellant after the incident testified that appellant stated that he was angry and that his wife was crying while they had sex. However, appellant maintained that the sex was consensual. The police officer testified that appellant claimed that after the consensual sex, appellant told the victim "she could go back to Doug now." Tran. 176. The police officer, as well as the victim's sister, testified that the victim was crying and withdrawn after the incident. Since, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt and since there is no evidence that the jury, as trier of fact, clearly lost its way and created a manifest miscarriage of justice as to the charge of rape, appellant's third assignment of error is overruled.
The Judgment of the Stark County Court of Common Pleas is affirmed.
GWIN, P.J. and HOFFMAN, J. CONCUR.